[No. 122-40758-1.    Division One.    May 18, 1970.]
Panel 2

PACIFIC GAMBLE ROBINSON Co., *Appellant*, v. PAY'N SAVE
DRUGS, INC., *Respondent*.

*Schweppe, Doolittle, Krug & Tausend, Alfred J.
Schweppe, Mackall, Crounse, Moore, Helmey & Holmes,*
and *Perry R. Moore,* for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long, Paul W. Steere,*
and *Ronald T. Schaps,* for respondent.

UTTER, J.—Appellant, Pacific Gamble Robinson Co.,
leased property from Lincoln National Life Insurance Co.
and operated a grocery store under the name Tradewell
Stores, Inc. on a part of that property. Appellant, in turn,
leased a portion of that property to respondents who oper-
ated Pay'n Save Drugs, Inc. on their part.[1]

The original sublease between Tradewell and Pay'n Save,
executed in 1955, provided for two types of rental: mini-
mum rental and excess rental. Excess rental was discussed
under a lease heading entitled "Gross Sales Rental" in the
original sublease and was the rental paid in addition to the
minimum rental which was determined by deducting the

_____
[1]The parties will hereafter be referred to as Tradewell and Pay'n
Save.

agreed minimum rental paid from a percentage of the gross sales of Pay'n Save. Pay'n Save was to pay 2½ per cent on the first $600,000 gross sales and 2 per cent on sales over $600,000 if the aggregate figure exceeded the agreed minimum rental.

Negotiations for a new lease began in 1962 to provide for an addition to the area leased by Pay'n Save. Both parties agreed to an expansion of the Pay'n Save store and agreed to amendments to the 1955 sublease and reduced this to writing. The document was entitled "Agreement to Amend Sublease."[2] The Agreement contains many internal references to the original sublease and it is apparent on its face the intent of the parties was that these documents were to be construed together.

The questions presented on appeal are whether the Agreement was ambiguous; if it was, is there substantial evidence to support the trial court's determination from the parol evidence presented that the testimony favored Pay'n Save's interpretation; and did the trial court properly order specific performance of the Agreement to extend the lease to October 31, 1979.

The pertinent provisions of the original sublease and the Agreement provide:

SUBLEASE

(3) *Gross Sales Rental.* Pay'n Save agrees during each year of this sublease to determine its gross sales from its use, or occupancy of said leased premises, and/or from the business conducted on or in connection therewith, . . . In the event the sum total of 2½% of such gross sales up to $600,000.00 and 2% on any amount in excess thereof, for any lease year, is in excess of the amount of the minimum annual rental as provided aforesaid, Pay'n Save agrees to pay Pacific such excess as additional rental for said leased premises within thirty (30) days after the close of such lease year.

AGREEMENT TO AMEND SUBLEASE

(3) Effective as of said commencement date, said Sub-

---

[2]The Agreement to Amend the Sublease shall hereafter be referred to as the Agreement.

lease dated November 1, 1955, shall be amended in writing by the parties hereto in the following respects:

. . .

(c) Paragraph (1) shall provide for the extension of the term to October 31, 1979, less one day.

. . .

(e) Paragraph (3) shall be amended to provide for the payment of gross sales rental of $1\frac{1}{2}\%$ of gross sales in excess of $1,250,000 for any lease year . . .

. . .

(h) Paragraph (20) providing for options to extend the term of the lease, is to be deleted.

. . .

(j) The amended sublease shall provide that except for the foregoing, all of the terms and conditions of the Sublease shall remain in full force and effect and shall be deemed to apply to the additional real property and improvements as well as the leased premises covered by the Sublease.

The trial court found the intent of the parties in amending the sublease with respect to the payment of rent was to continue the original method of calculating percentage rate whereby percentage rate is payable only to the extent it exceeds the minimum rent and to add a new percentage bracket for sales over $1,250,000.

Tradewell contends the rental formula set out in paragraph 3 (e) of the Agreement was intended to be a complete substitution for the formula set forth in the original sublease and that in addition to the other percentage being replaced, the deduction of minimum rent was to be deleted. We do not agree with Tradewell.

Examining just the sublease and the Agreement themselves, they show that in the one instance where the parties did desire to eliminate a portion of the sublease, they added a separate paragraph in the Agreement in subparagraph (h) to accomplish this and stated the matter was to be deleted. Except for subparagraph (h), the other portions of the Agreement provide for amendment rather than deletion. The word "amendment" has been defined to mean in

Merriam-Webster Third International Dictionary (1969): "correction of a fault or faults." "Delete," on the other hand, is defined as meaning to: "ERASE, EXPUNGE, . . . to eliminate as a factor or a matter for consideration." The Agreement did not indicate the provision for deduction of minimum rent was to be deleted or that the parties intended to reverse the method of calculating percentage rental they had been using during the term of the original sublease.

To support its contention, Tradewell places strong reliance on statements in a letter, sent by the attorney who represented both parties, to Tradewell and Pay'n Save prior to the execution of the Agreement.

■ This letter is not referred to or incorporated in the Agreement. The evidence demonstrates conclusively that the parties intended the Agreement to be the final and complete expression of the parties. As such, it is an integrated document and makes inoperative any prior or contemporaneous oral or written agreements. Restatement of Contracts §§ 228, 229, 237 (1932); *Diel v. Beekman,* 1 Wn. App. 874, 465 P.2d 212 (1970), and cases cited therein.

We have recently called attention to the apparent conflict in our jurisdiction on the question of whether the court may examine the circumstances surrounding the execution of the writing as an aid to its interpretation, even though the writing is, on its face, unambiguous, or whether the court is restricted to the four corners of a contract writing unless what appears within those four corners is ambiguous. *Beedle v. General Inv. Co.,* 2 Wn. App. 594, 469 P.2d 233 (1970). As in *Beedle,* we do not need to resolve this question. If we are restricted to looking only to the four corners of the Agreement, we, for the reasons already stated, find no ambiguity and believe the interpretation urged by Pay'n Save is correct.

If, on the other hand, the court is able to consider the operative uses and the circumstances prior to and contemporaneous with the making of the Agreement as an aid to interpretation, the same result is reached. Restatement of

Contracts §§ 230, 245, 246, 247 (1932). The court, after hearing all the testimony, did not find any operative uses which would change the apparent meaning of the language of the Agreement. We likewise cannot say, after examining the record, that as a matter of law the testimony establishes operative uses as between the parties which would change the meaning of the Agreement.

Proceeding on the basis that there was an ambiguity, however, the trial court did find the intent of the parties with respect to amending the sublease to be in accordance with Pay'n Save's interpretation. Without detailing the testimony and conflicts in the evidence, there is substantial evidence to support the trial court's findings and conclusions regarding the intent of the parties, and the trial court must likewise be sustained on these grounds as well.

The expiration date of the original sublease was January 1, 1968, and two options were granted Pay'n Save in the sublease to extend the term to October 31, 1979. Paragraph (c) of the Agreement extended the term and paragraph (h) of that Agreement, as already set out, deleted that portion of the original sublease providing for options to extend.

Pay'n Save, in light of this, gave no notice of exercise of the options as required in the original sublease. Tradewell contends this failure caused Pay'n Save's tenancy to lapse on January 1, 1968. Although an amended sublease was not signed by the parties, which would have formally extended the term, each side offered the other drafts of the amended sublease in accordance with their interpretation of that Agreement.

The trial court found the Agreement dispensed with the requirement of such notice and constituted a valid agreement and extension of the sublease; that Pay'n Save had at all times been ready to do equity, execute a sublease in conformity with the Agreement of the parties, had tendered checks which were refused, paid rentals calculated on the Agreement, and, that Tradewell did not question Pay'n Save's right to possession or the validity of the Agreement

to extend the sublease for over 4 years until shortly before the trial. It further found Tradewell's refusal to execute the amended sublease, in conformity with the Agreement of the parties, was the reason the document had not been executed.

The court's findings are supported by substantial evidence and justify the further finding that the parties dispensed with the requirement of notice, that the Agreement was valid and was, in itself, an extension of the sublease.

The order of specific performance of the Agreement was within the court's authority to enter. *Bower v. Bagley,* 9 Wash. 642, 38 P. 164 (1894); *Le Marinel v. Bach,* 114 Wash. 651, 196 P. 22 (1921). The facts justify its use in the case.

The judgment of the trial court is affirmed.

HOROWITZ, A. C. J., and WILLIAMS, J., concur.

Petition for rehearing denied October 16, 1970.