[No. 43011.   En Banc.   November 21, 1974.]

JAMES BARRIE et al., Appellants, v. KITSAP COUNTY et al., Respondents.

*Derrill T. Bastian* and *William H. Fraser,* for appellants.

*John C. Merkel, Prosecuting Attorney,* for respondents Kitsap County et al.

*Bishop, Cunningham & Costello, Inc., (P.S.)* by *John Bishop* and *Leonard W. Costello, Monheimer, Schermer, Van Fredenberg & Smith,* by *Roland Johnson,* for respondents Vergeer et al.

[As amended by order of the Supreme Court January 7, 1975.]

HUNTER, J.—The appellants (plaintiffs), James and Sheila Barrie, along with surrounding landowners, appeal from the decision of the Superior Court for Kitsap County, which upheld the approval of a rezone of certain property and voided a proposed planned unit development (or PUD). The respondents (defendants) in this case include the Kitsap Planning Commission, the Kitsap Board of County Commissioners, and the project developers of the PUD.

The land which is subject to the disputed rezone and planned unit development is located near Bremerton in an unincorporated area and has previously been used as a dairy farm. On two sides are located main traffic arterials, one of which is a 4-lane state highway. In addition, two of the adjoining sides and part of a third are zoned for general business activities. The land is bordered to the east by a large commercial shopping center; to the north by Riddell Road where a gas station is located; and to the south by a food market and a furniture store.

On October 7, 1970, the defendant developers, Robinson, Vergeer, and Ness filed an application for a rezone of the above 31.8-acre tract of land from its then existing classification of RE-7500 (single family residential) to the proposed classification of BG (business general). A separate application was filed requesting the approval of a planned

unit development of the same property as a shopping and professional center. Both applications were dated October 6, 1970, and were submitted together to the Kitsap County Planning Commission (hereafter referred to as the "Commission").

Following the submission of the two applications to the Commission, a notice of a public hearing was published on October 15, 1970, in the Bremerton Sun, a legal newspaper. The notice advised the public of the proposed rezone in conjunction with a PUD for a shopping and professional center. However, the notice failed to state the time, date and place of the public hearing. According to the record, on the 14th of October 1970, a letter containing notice had been mailed to property owners within 400 feet of the property subject to the rezone, advising them of the hearing. This letter did contain the date, time and location of the hearing. On October 27, 1970, the Commission held an open hearing and tabled the proposed rezone and PUD.

Notice of the next open meeting was published on November 11, 1970, in two legal newspapers, the Bremerton Sun and the Port Orchard Independent. The notice indicated the time, place and purpose of the second meeting, which was held on November 24, 1970. During the course of this hearing, the Commission decided that the rezone and PUD should be discussed with the City of Bremerton and, therefore, the subject was tabled once again.

On December 29, 1970, at the regularly scheduled meeting of the Commission, the proposed rezone and PUD was considered for the third time. During the interim since their last meeting, the Commission had received approval from the City of Bremerton conditioned on the assurance that all construction would be in accordance with the City's building standards. In the course of the meeting, a motion to approve the rezone was made and passed by a vote of 6 to 0 with the chairman abstaining. In addition, a separate motion was passed to approve the PUD application subject to several conditions.

Subsequently, the recommendations of approval for the

rezone and the PUD were submitted by the Commission to the Kitsap County Board of County Commissioners (hereafter referred to as the "Board"). On January 18, 1971, in an open meeting, the Board unanimously approved both applications and rezoned the 31.8-acre tract to business general. According to the minutes:

> "There was a motion by Commissioner Lobe that the rezone be approved and an ordinance amendment be passed, and that the planned unit development be approved and a resolution be passed."

The record shows that neither during the course of the January 18 meeting nor any prior meeting, had opposition been expressed concerning the proposed rezone and PUD.

Following the hearing of January 18, 1971, no final development plans for the proposed PUD were submitted by the developers until February 7, 1973. No extension was applied for or granted on or before January 18, 1972. On February 7, 1973, the defendant Ness submitted a final development plan for Phase I of the PUD to the Board. Thereafter, on April 23, 1973, the final development plans for Phase II were submitted and accepted by the Board.

On May 31, 1973, the plaintiff Barrie protested the Board's actions by filing a writ of certiorari with the Superior Court for Kitsap County alleging, among other things, that the PUD was void and that the original single family residential classification should be reinstated. Subsequently, on August 12, 1973, other parties successfully moved to join in the suit. A return to the writ was filed by the defendants and on August 29, 1973, a trial commenced at which time the court took evidence and heard arguments of counsel.

On October 5, 1973, the trial court entered findings of fact and conclusions of law, holding that (1) the notice of October 15, 1970, was incomplete and therefore invalid; (2) the notice published on November 11, 1970, was in compliance with the statutory requirements, and therefore did constitute legal notice; (3) a verbatim record of the pro-

ceedings need not be kept by either the Commission or Board, and that minutes were lawful and sufficient; (4) the record taken as a whole fails to reveal any appearance of unfairness during the course of the proceedings; (5) the proposed PUD is void for failure on the part of the developers to submit a final development plan within 1 year of the preliminary approval; (6) the PUD and the rezone are separate and severable, and therefore the voiding of the PUD did not taint the validity of the rezone; and (7) an affirmative act by the Board is required to rezone the tract back to its original classification. In response to this decision, the plaintiffs appeal.

█ It is conceded the trial court was correct in ruling that the application for the PUD was void under section 4.5.2.3 of the zoning ordinance for the reason that no final development plans had been filed with the Board within 1 year, or on extension of time obtained. The plaintiffs contend, however, that the voiding of the PUD application automatically voided the application to rezone. They argue that otherwise the notice was misleading and defective since it failed to inform a concerned citizen that a blanket rezone, without an attached PUD, could result. The defendants on the other hand contend that the applications were separate and were considered separately, and it was never intended that the approval of the rezone be dependent on the approval of the PUD. The record appears to support this conclusion, but the sufficiency of the notice must be considered independent of what the Commission, in good faith, may have had in mind or intended. The question is whether or not the notice was defective in that the plaintiffs and concerned citizens were in fact misled. We agree with the plaintiffs.

RCW 36.70.580 required that the Commission hold at least one public hearing before recommending an amend-

ment or official control[1] to the Board. RCW 36.70.590 provides in part:

> Notice of the time, place and *purpose* of the hearing shall be given by one publication . . . at least ten days before the hearing.

(Italics ours.) Pursuant to the statute, the following notice was published on November 11, 1970, in the Bremerton Sun and the Port Orchard Independent:

> The regular meeting of the Kitsap County Planning Commission will be held Tuesday, November 24, 1970 at 10:00 A.M. or thereafter, in the County Administration Building, Port Orchard, Washington. The purpose of the meeting will be to hold public hearings on the following: (NOTE: Old Business is scheduled to begin at 10:00 A.M. and New Business to begin at 1:30 P.M.)
>
> . . .
>
> PUBLIC HEARING: Application has been submitted to the Kitsap County Planning Commission requesting approval of a rezone from RS-7500 to Business General *in conjunction with approval of a planned unit development* which proses [*sic*] a shopping and professional center on a parcel of land containing 31.8 acres with related parking and accesses. Name of the applicants: Mr. Gerald S. Vergeer, Coordinator of Silverdale Realty, and Mr. J. H. Robinson and Mr. Neal C. Ness, c/o Silverdale Realty, P.O. Box 56, Silverdale, Washington. Location of the property is at the southwest corner of Riddel Road and the Brownsville Highway (Hwy. 21-B).
>
> . . .
>
> For persons wishing additional information or the exact legal descriptions of the above described property, feel free to contact the Kitsap County Planning Department at TRiangle 6-4441, Extension 255.

(Italics ours.)

■ We feel that any citizen reading this notice would be led to believe that the rezone and the PUD were one proposal to be considered together and not separately and that the rezone was for the exclusive purpose of a PUD development. The purpose of the notice required by this

---

[1] *See* RCW 36.70.550 and RCW 36.70.560 for definitive explanation of official control.

statute is to fairly and sufficiently apprise those who may be affected by the proposed action of the nature and character of the amendment so that they may intelligently prepare for the hearing. *Glaspey & Sons, Inc. v. Conrad*, 83 Wn.2d, 707, 711, 521 P.2d 1173 (1974).

■ To fully understand the deficiency of this notice one must be cognizant of the effects a planned unit development has upon an area. The PUD is intended to achieve *flexibility* by permitting *specific* modifications of the customary zoning standards as applied to a particular parcel of land. *Lutz v. Longview*, 83 Wn.2d 566, 520 P.2d 1374 (1974). The very definition of the word "planned" includes the connotation of a project which stresses imaginative scope. *Webster's Third New International Dictionary* (1961). In this case, an individual who viewed a map of the proposed planned unit development, which was on file and a matter of public record, would have seen an imaginatively drawn plan providing for new buildings with surrounding landscaping. The land was inventively contoured. There was adequate parking and specific space provided for pedestrian circulation. Such a development may very well have met with approval of the community, which could have accounted for the absence of objections to the applications at the rezone hearings; whereas, a rezone of the property to business general, as compared to a rezone restricted by a planned unit development, would conceivably be unsightly, congested, and could be wholly objectionable to adjoining landowners and members of the community. Our holding that the notice in this case is deficient is mandated by the constitutional requirement calling for procedural due process of law. One of the basic touchstones of due process in any proceeding is notice reasonably calculated under all the circumstances to apprise affected parties of the pending action and afford them an opportunity to present their objections. *Armstrong v. Manzo*, 380 U.S. 545, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965).

We hold that the notice provided by the defendants was defective in that it conceivably deprived the plaintiffs, and

all other affected parties, of their opportunity to be heard, by misleading them into believing that the proposed PUD and the rezone would be treated as one action. Therefore, the initial rezone was invalid, and is hereby declared void.

The plaintiffs also challenge the sufficiency of the record, contending that rezone proceedings are quasi-judicial in nature and therefore require a verbatim record to be kept by both the planning commission and the board of county commissioners. We agree.

In the case of *Chrobuck v. Snohomish County*, 78 Wn.2d 858, 869, 480 P.2d 489 (1971), we stated that a planning commission, in its role as a hearing and fact-finding tribunal, "partakes of the nature of an administrative, quasi-judicial proceeding . . ." Furthermore, in *Fleming v. Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972), we stated on page 299:

> The process by which they [zoning decisions] are made, *subsequent* to the adoption of a comprehensive plan and a zoning code, is basically adjudicatory.

(Italics ours.) In addition, we distinguished between the legislative function of enacting the initial comprehensive plan and zoning ordinance from subsequent rezones. We held that

> in amending a zoning code, or reclassifying land thereunder, the same body, in effect, makes an adjudication between the rights sought by the proponents and those claimed by the opponents of the zoning change.

*Fleming v. Tacoma, supra* at 299.

A full and complete record is important in all types of proceedings. However, the necessity of an adequate record is especially acute when the court is called upon to review adjudicatory proceedings. In *Loveless v. Yantis*, 82 Wn.2d 754, 513 P.2d 1023 (1973), we recognized on page 762 that:

> Courts reviewing the proceedings of planning commissions and county commissioners in zoning cases are

normally restricted to a consideration of the record made before those groups.

In *Loveless* on page 763 we adopted the decision of *Russo v. Stevens,* 10 Misc. 2d 530, 173 N.Y.S.2d 344 (1958), and concluded that

> no adequate or intelligent judicial review is possible unless all the essential evidentiary material upon which the administrative agency predicates a quasi-judicial determination is in the record and before the court.

The very purpose for requiring a record is to provide an adequate factual accounting which will enable a reviewing court to resolve the issues before it in a given case. In light of our determination that rezone proceedings conducted by county planning commissions and boards of county commissioners are quasi-judicial in character, we hold that a verbatim record of rezone proceedings hereafter initiated shall be required in order that we assure future parties a full and complete judicial review.

In view of our disposition of this case, we need not reach the other issues raised.

The decision of the trial court, holding the rezone to be valid, is reversed.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied January 7, 1975.