[No. 6360–1. Division One. October 1, 1979.]

HUGH A. HALL, ET AL, *Appellants,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Maslan & Maslan, Robert G. Maslan, Robben & Blauert,* and *Paul W. Robben,* for appellants.

*Douglas N. Jewett, City Attorney, Dona Cloud, Assistant, Dodd & Coney, P.S.,* and *Byron D. Coney,* for respondents.

ANDERSEN, J.—

FACTS OF CASE

The plaintiffs are three Seattle police sergeants. They appeal from the trial court's denial of their request for writs of mandamus and prohibition against the City of Seattle (City), the Seattle Civil Service Commission and the commissioners thereof.

At issue is the validity of certain Seattle civil service eligibility registers and actions of the Civil Service Commission of the City of Seattle (Commission), and whether the three plaintiffs are entitled to an order directing the Commission to appoint them to the position of police lieutenant. The trial court permitted 14 other police sergeants, some of whom were subsequently appointed police lieutenants, to intervene as defendants.

The following chronology of unchallenged facts explains the controversy.

March 29, 1974     The three plaintiff police sergeants were formally notified by a police department bulletin that they had passed a civil service examination for police lieutenant and were put on the eligibility register.

January, 1977     The 1974 eligibility register was extended for 1 year or until a new

test could be given and a new eligibility register promulgated.

March 12, 1977    A new civil service examination for police lieutenant was held. As of that date, the three plaintiffs were on top of the extended eligibility register.

May 13, 1977    A new eligibility register for police lieutenant was published and posted by the Commission's secretary and chief examiner. The 3 plaintiffs and the 14 intervenors all passed the examination. The plaintiffs ranked 30, 39 and 49 out of the 82 persons named on the new register, thus making it unlikely they would be appointed as lieutenants. The ranks of the intervenors, on the other hand, included 11 of the first 12 names on the list and all of the intervenors ranked ahead of the 3 plaintiffs.

May 13 to
October 5, 1977    During this period of time, 3 police lieutenant appointments were made by the chief of police from the top 25 percent of the new (May 13th) eligibility register.

October 5, 1977    In a virtual ex parte proceeding, without notice to most of the persons affected, the Commission overruled its secretary and chief examiner thus invalidating the March 12, 1977 examination along with the new eligibility register.

October 19, 1977    The Commission unanimously voted to reconsider its October 5th action by which it had invalidated the

examination and set a new hearing on the matter for November 9, 1977. The basis for the Commission's decision to reconsider was that it may have made a mistake or misperceived certain facts at the time of its October 5th action.

November 9, 1977   The superior court issued a temporary restraining order forbidding the Commission from reconsidering its October 5th decision.

December 13, 1977   Following a trial, the superior court judge to whom the case was tried filed a memorandum decision holding:

"It is the opinion of this Court that the Commission's decision to rehear its ruling of October 5, 1977 falls within its inherent powers and is neither arbitrary nor capricious. Accordingly, the temporary restraining order entered herein previously is dissolved."

December 20, 1977   The Commission thereupon reversed its October 5, 1977 action and validated the examination and new eligibility register. No appeal was taken from that action and other appointments have since been made from the new register.

January 30, 1978   An order denying writs of mandamus and prohibition was formally entered by the superior court along with findings of fact and conclusions of law.

This appeal followed.

One ultimate issue is presented.

## ISSUE

In the absence of statute, charter or ordinance authorizing an administrative agency to reconsider or modify one of its final determinations, does it have the authority to do so?

## DECISION

CONCLUSION. An administrative agency such as the Civil Service Commission of the City of Seattle does have a limited inherent power to reconsider, absent a statute, charter, ordinance or rule prohibiting same.

██ In support of their arguments that the Commission had no authority to reconsider its action throwing out the civil service examination and new eligibility register, the three plaintiffs rely primarily on *State ex rel. Worsham v. Brown,* 126 Wash. 175, 218 P. 9 (1923) and *State ex rel. Hearty v. Mullin,* 198 Wash. 99, 87 P.2d 280 (1939).

In *Worsham,* the civil service commission sitting as a quasi–judicial tribunal, upheld the discharge of a police officer by the chief of police. Approximately 5 months later, after one of the commissioners had been replaced, the discharged officer petitioned for a rehearing. Two months thereafter, a rehearing was held and the officer reinstated. On appeal, the State Supreme Court held that the civil service commission, being a body of limited jurisdiction when acting in a quasi–judicial capacity, had no inherent power to grant the rehearing or annul its own final order discharging an employee.

In *Hearty,* the court held that when the civil service commission, after a full examination, published an eligible list for the civil service position of truck driver, it had no right to thereafter regrade the examination and change the grades and ratings of the persons on the eligible list. In so ruling, the court followed *Worsham.*

In *Worsham,* a final quasi–judicial decision was overturned by the commission after over one–half year had elapsed, and after there had been a change in commission membership. In *Hearty,* the civil service applicants were regraded and rerated after their names were revealed and

their standings on the eligibility list had been established. Unquestionably, the practices condemned in *Worsham* and *Hearty* were arbitrary and capricious as well as destructive of the civil service concept. As stated in *Hearty,* "the principle underlying civil service, is to make free and open the opportunity to enter the public service in accordance with certain tests as to qualification, and not to leave anything 'to whim or caprice of the appointive power.'" *State ex rel. Hearty v. Mullin, supra* at 103.

As important as maintaining the integrity of civil service systems is, it will ill serve the public interest to deny an agency the right to correct its own obvious mistakes when that can be done promptly and fairly. Other courts, which have held to the same effect as the State Supreme Court has in *Worsham* and *Hearty,* have recognized that in such limited circumstances, there is an exception to the general rule that an agency does not have the authority to reopen and reconsider a final decision in the absence of a specific statute, charter or ordinance authorizing it. *See Comment Note: Power of administrative agency to reopen and reconsider final decision as affected by lack of specific statutory authority,* Annot., 73 A.L.R.2d 933, 951–52 (1960); 2 Am. Jur. 2d *Administrative Law* § 524, at 336 (1962).

We think the proper view is that expressed by the Supreme Court of Minnesota in an analogous case:

> Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it.

*Anchor Cas. Co. v. Bongards Co–Operative Creamery Ass'n,* 253 Minn. 101, 106, 91 N.W.2d 122, 126, 73 A.L.R.2d 933 (1958).

What is involved in the present case is not of the same genre of conduct as was involved in *Worsham* and *Hearty*

at all. Here the trial court specifically found that the Commission's actions were not arbitrary and capricious and that reconsideration was promptly ordered by the Commission when it ascertained that it may well have made a mistake and misperceived facts in peremptorily invalidating the entire civil service examination and new eligibility register. The requisite extraordinary circumstances and lack of any unfairness or arbitrary and capricious conduct on the part of the Commission was established. Due and prompt notice was given to all the parties of the new hearing. No legal rights of the three plaintiffs were prejudiced. The trial court did not err in denying the writs of mandamus and prohibition seeking to invalidate the eligibility register.

Affirmed.

SWANSON, A.C.J., and WILLIAMS, J., concur.