[No. 58990-9.    En Banc.    March 3, 1994.]

RESPONSIBLE URBAN GROWTH GROUP, *Respondent*, v.
THE CITY OF KENT, *Defendant*, S.D.M. PROPERTIES, ET
AL, *Appellants*.

*Roger M. Leed* (of *Roger M. Leed, P.S.*), for appellants.
*Peter J. Eglick & Associates,* by *Peter J. Eglick* and *Bob C. Sterbank*, for respondent.

MADSEN, J. — This court granted appellant S.D.M. Properties (SDM) direct review of a King County Superior Court judgment invalidating a City of Kent (City) zoning ordinance and voiding a building permit issued to SDM under that ordinance. SDM contends that the City's adoption of the ordinance met all notice requirements, and that the trial court improperly voided the permit. We reject these contentions and affirm the trial court.

### FACTS

SDM owns an 86-unit apartment complex called Stratford Arms in the city of Kent. SDM also owns a smaller neighboring parcel hereafter referred to as the "Ward" property. In late 1986 or early 1987, the City annexed an area which included the Stratford Arms apartments and the

Ward property. Initially, the City adopted interim single family residential zoning for the entire area. In late 1987 and early 1988, the Kent Planning Department recommended that the area be permanently zoned single family residential except for Stratford Arms which had already been developed as multifamily. The Kent hearing examiner, however, recommended that both Stratford Arms and the Ward property be zoned multifamily.

The City scheduled public hearings on the issue of permanent zoning and provided the required notice including the time of the hearings, an explanation of the subject matter, a detailed description of the property involved, and a statement regarding the public's right to present testimony. The Kent City Council (Council) held two public hearings to consider the proposed zoning. During the hearings, the Council debated the zoning for the Ward property. At the close of the second hearing, on March 1, 1988, Councilmember Woods moved to concur with the hearing examiner's recommendation to zone the Ward property multifamily. However, Councilmember Johnson moved to zone all of the area as single-family residential, with the exception of the Stratford Arms property that was already developed.

Some confusion regarding Johnson's proposal ensued and he clarified that his motion did not apply to " 'the area that's already developed as multifamily' ". Clerk's Papers, at 1795. The Council's official minutes state:

> JOHNSON MOVED to amend the motion to modify the recommendation of the Hearing Examiner as follows: for the area *north* of S.E. 252 [*sic*] to be zoned R1-12, 12,000 sq. ft. lots and for the parcel *south* of S.E. 252nd to be zoned R1-9.6, 9600 sq. ft. lots. [single family] . . . Upon McFall's question about Stratford Arms, it was clarified Johnson's proposal [to establish single-family zoning] excludes any property already developed as multifamily.

Clerk's Papers, at 900-01. After considerable debate, councilmembers unanimously approved Johnson's motion.

The city attorney later reviewed the hearing minutes and drafted ordinance 2771 which zoned the area single-family residential with the single exception of the Stratford Arms

property which was zoned multifamily. On March 15, 1988, the Council reviewed and affirmed the minutes of the hearings, ratified the intention to zone the Ward property as single-family residential, and adopted ordinance 2771. SDM did not seek review of the new ordinance within the statutory limitation period.

In September 1988, approximately 6 months later, SDM apparently became aware that the Ward property had been zoned single-family residential. SDM approached the Council and other city officials about either correcting what SDM perceived as an error in ordinance 2771, or having the ordinance overturned administratively. The city attorney informed SDM that there was no error and that SDM's only recourse would be a rezone.

SDM then met ex parte with individual councilmembers and asked each member how he or she had originally intended to zone the Ward property. During these meetings, SDM requested that each councilmember sign a form letter stating that his or her original intent had been to zone the Ward property and Stratford Arms together as multifamily. Five of the seven councilmembers signed form letters. According to affidavits considered by the trial court, these councilmembers did not review the minutes of the hearing at which ordinance 2771 was adopted prior to signing the letters.[1] SDM then informed the city attorney that it possessed the five form letters and that it would sue if the Ward property were not zoned multifamily.

On February 7, 1989, the Council met in a closed executive session to consider the Ward property's zoning and the threatened litigation. The record indicates that Councilmember Johnson expressed concern that the executive session violated the Open Public Meetings Act of 1971, RCW 42.30, and left the session when it became apparent that the Council was going to proceed despite his objections. Two other councilmembers, Woods and Mann, also left shortly thereafter. Following the executive session, the Council

---

[1]Councilmembers Woods and Johnson did not sign form letters and expressed reservations regarding whether signing the letters constituted a circumvention of the official rezoning process.

drafted ordinance 2837 which changed the zoning of the Ward property to multifamily.

Two weeks later, on February 21, 1989, the Council met in a regular session and considered ordinance 2837. The only notice that the Council would consider the matter was in the Council's summary agenda which stated simply "East Hill Well Annexation Area C — Ordinance" under the heading "other business". At this session, the Council debated whether ordinance 2771 accurately reflected councilmembers' intent or if councilmembers had been confused about whether the Stratford Arms property included the undeveloped Ward property when they adopted ordinance 2771.

Ms. McClung, who worked for the Kent Planning Department, commented during the session that Stratford Arms and the Ward property " 'were handled as two separate parcels throughout' " the two original public hearings. Clerk's Papers, at 1795. Mayor Kelleher warned the Council that the issue of the councilmembers' original intent was "irrelevant" because "[i]t is not legal for the Council to change its ordinance based upon a belief that an ordinance was passed inadvertently when you intended to pass something else." Clerk's Papers, at 28. The mayor further noted that such an action would be appropriate only where the record indicated that a different ordinance should have been passed "based upon the public record — not based upon a divergence or a difference in intent". Clerk's Papers, at 28. Councilmember Johnson also objected to consideration of ordinance 2837 and to the fact that there had been virtually no notice given to the public. At the end of the session, the Council adopted ordinance 2837 by a vote of 4 to 3. The preamble of ordinance 2837 states:

> WHEREAS, the Council determines that its intent, as reflected in the record of its March 1, 1988 meeting, was that the zoning designation for both the developed and undeveloped portions of Stratford Arms site was to be MRM, Medium Density Multifamily Residential; and
>
> WHEREAS, Ordinance 2771 does not reflect such intent . . .

CP, at 265. Subsequently, respondent Responsible Urban Growth Group (RUGG) organized and filed a petition for writ of review in King County Superior Court. In the writ, RUGG sought to have ordinance 2837 invalidated and requested injunctive relief against any action by the City or S.D.M. Properties in reliance on the "corrected" zoning classification. On April 14, 1989, the parties agreed to a writ of review. The court issued a writ and the City filed a return to the writ on July 25, 1989.

SDM contemporaneously attempted to obtain a building permit pursuant to ordinance 2837 but met with stiff opposition from RUGG. Three years after its initial application and approximately 2 months before trial, SDM was granted the building permit and began foundation work on the Ward property. However, SDM halted construction shortly before trial. The matter came to trial on January 7 and 9, 1992.

The court determined that the proceeding to "correct" ordinance 2771 was not a correction but a rezone; that regardless of whether the action was a legislative correction or a quasi-judicial rezone, proper notice was required under local ordinances and state law; that the Council failed to give proper notice of the rezone; and that the Council violated the appearance of fairness statute by failing to disclose the ex parte meetings between the councilmembers and SDM. Accordingly, the court ruled:

> All actions taken pursuant to Ordinance 2837, including any permits issued in reliance thereon, are also hereby declared invalid and void, as of the date of their issuance or inception, and defendants are hereby permanently stayed and enjoined from taking any action in reliance upon or under the authority of Ordinance 2837 or otherwise not in compliance with established law. Defendant City of Kent is further permanently stayed and enjoined from taking any action changing or affecting the zoning for the Ward Property, as established under Ordinance 2771, until legal prerequisites for rezone of that property have been completed in accordance with the provisions of the Kent Zoning Code, State law, and due process requirements.

Clerk's Papers, at 1804-05. The court later denied a motion for reconsideration by SDM. That motion included an argument that the building permit could not be voided for equitable reasons because SDM had started construction and, therefore, had vested rights.

## ANALYSIS

The central issue in this appeal is whether the trial court erred in holding that the Council adopted ordinance 2837 illegally, in violation of statutory and due process notice requirements. However, SDM's first challenge is to the trial court's basic authority to determine the legality of ordinance 2837. SDM contends that the trial court was not permitted to consider the legality of ordinance 2837 but rather was limited in its review to whether the adoption of the ordinance was arbitrary and capricious. Since the court did not find that the adoption of the ordinance was arbitrary and capricious, SDM argues that its decision invalidating the ordinance must be reversed.

SDM bases its argument on *State v. Ford*, 110 Wn.2d 827, 831-32, 755 P.2d 806 (1988). *Ford* concerned a challenge to a state toxicologist's approval of a breath alcohol testing device. The defendant challenged the legality of the approval but the court reasoned that since the toxicologist had the authority by law to approve the device, the question was really whether the toxicologist's action constituted an arbitrary and capricious act. The *Ford* court defined such an act as a " ' " 'willful and unreasoning action in disregard of facts and circumstances' " ' " and held that the toxicologist's approval of the test did not fall to this level. *Ford*, at 830, 836.

SDM reasons that since the City had the lawful authority to enact zoning ordinances, ordinance 2837 could only be reviewed under the arbitrary and capricious standard set out in *Ford*. SDM reasons further that, since the court did not find that ordinance 2837 was an arbitrary and capricious act, it was bound by the language of the preamble. Since the preamble states that ordinance 2837 is meant to correct a drafting error in ordinance 2771, SDM posits that

ordinance 2837 partakes of the same legislative character as ordinance 2771 and benefits from the notice provided prior to the adoption of ordinance 2771. Therefore, SDM concludes, notice requirements are satisfied and the appearance of fairness doctrine, which applies only to quasi-judicial acts, is irrelevant.

■■ Contrary to SDM's contentions, however, *Ford* did recognize that judicial review of agency actions "may indeed pose a question of law" where an agency action is not consistent with its statutory authority. *Ford*, at 831. Furthermore, in a statutory writ of review action, the court examines whether a local legislative body had jurisdiction to take the action at issue, whether the action was lawful, or whether the action was arbitrary and capricious. RCW 7.16-.120; *Chaussee v. Snohomish Cy. Coun.*, 38 Wn. App. 630, 636, 689 P.2d 1084 (1984). Likewise, under a constitutional writ, the court has inherent power under article 4, section 6 of the Washington State Constitution to determine whether the action of a local legislative body was illegal or arbitrary and capricious. *See Bridle Trails Comm'ty Club v. Bellevue*, 45 Wn. App. 248, 251-52, 724 P.2d 1110 (1986) (citing *Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 693-94, 658 P.2d 648 (1983) and *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 643 P.2d 426 (1982)); *Kerr-Belmark Constr. Co. v. City Coun.*, 36 Wn. App. 370, 674 P.2d 684, *review denied*, 101 Wn.2d 1018 (1984). Under either a statutory or a constitutional writ of review, therefore, the court may review for arbitrariness as well as for the illegality of an action depending on the issue presented.

In this case, RUGG sought both a statutory writ of review pursuant to RCW 7.16 and a constitutional writ of review issued pursuant to article 4, section 6 of the Washington State Constitution. Both parties stipulated to the writ of review without distinguishing whether it was statutory or constitutional. Under either form of writ the court could properly consider both whether the adoption of ordinance 2837 was illegal or whether the Council's action

was arbitrary and capricious.[2] Here the court found the ordinance illegal. Thus, it was not necessary for the court to determine whether the adoption of the ordinance was also an arbitrary and capricious act.

Integral to its analysis is SDM's additional contention that the trial court exceeded its scope of review when it relied on evidence outside the return of the writ in making the factual determination that the ordinance was a rezone, not a correction.

■ Under a writ of review, a municipality or agency must return a complete record concerning the challenged action. When the petition involves allegations of procedural irregularities or appearance of fairness, or raises constitutional questions, the court may consider evidence outside the record. *Federal Way v. King Cy.*, 62 Wn. App. 530, 534 n.2, 815 P.2d 790 (1991); Washington State Bar Ass'n, *Real Property Deskbook* § 86.16 (1989); Richard L. Settle, *Washington Land Use and Environmental Law and Practice* 322 (1983). Here, the writ of review specifically raised constitutional and procedural irregularities as well as the appearance of fairness; therefore, the trial court correctly considered evidence outside the record.

Having concluded that the trial court had the authority to review the legality of ordinance 2837 and properly relied on evidence outside the record on the writ, we reach the central issue in this case: whether the City violated statutory and due process notice requirements in adopting ordinance 2837. Based on the evidence presented, the trial court determined that the notice given by the City prior to the adoption of ordinance 2837 was insufficient. We agree.

Both the Revised Code of Washington and the Kent Zoning Code contain express notice requirements. RCW 35A.63-.100 provides:

> No zoning ordinance, or amendment [to the comprehensive zoning plan], shall be enacted by the legislative body without at least one public hearing, notice of which shall be given as set forth in RCW 35A.63.070.

---

[2]No issue is raised regarding the form of the writ.

RCW 35A.63.100(2). RCW 35A.63.070 requires that the:

time, place, and purpose of such public hearing shall be given as provided by ordinance and including at least one publication in a newspaper of general circulation delivered in the code city and in the official gazette, if any, of the code city, at least ten days prior to the date of the hearing.

RCW 35A.63.070. Likewise, section 15.09.050 of the Kent City Code requires notice for any amendment to the City's zoning provisions.

### Sec 15.09.050. Amendments.

This title may be amended by the city council by changing the boundaries of zoning districts (rezones which change the official zoning map) or by changing any other provisions thereof (text amendments which add, delete or otherwise modify the text of this title) whenever the public necessity and convenience and the general welfare require such amendment, by following the procedures of this section.

. . . .

B. *Public hearing.* The hearing examiner shall hold at least one (1) public hearing on any proposed amendment, and shall give notice thereof in at least one (1) publication in the local newspaper at least ten (10) days prior to the public hearing.

1. Notice shall be given to all property owners within at least two hundred (200) feet and, when determined by the planning director, a greater distance from the exterior boundaries of the property which is the subject of the application. Such notice is to be sent ten (10) days prior to the public hearing. . . .

2. Public notices shall be posted in one (1) conspicuous place on or adjacent to the property which is the subject of the application at least ten (10) days prior to the date of the public hearing. Public notice shall be accomplished through use of a four (4) foot by four (4) foot plywood face generic notice board, to be issued by the city planning department . . .. The applicant shall be responsible for placement of the notice boards in one (1) conspicuous place on or adjacent to the property which is the subject of the application at least fourteen (14) days prior to the date of the public hearing. Planning department staff shall post laminated notice sheets and vinyl information packets on the board no later than ten (10) days prior to the hearing. . . .

Kent City Code (KCC) 15.09.050.

■ Additionally, Washington courts have imposed qualitative due process notice requirements for zoning actions that extend beyond formal statutory notice requirements. Washington courts have held that notice must apprise interested citizens of the nature and purpose of the hearing so they can participate effectively. *Barrie v. Kitsap Cy.*, 84 Wn.2d 579, 584-86, 527 P.2d 1377 (1974); *Glaspey & Sons, Inc. v. Conrad*, 83 Wn.2d 707, 711-12, 521 P.2d 1173 (1974); *Port of Edmonds v. Northwest Fur Breeders Coop., Inc.*, 63 Wn. App. 159, 166-67, 816 P.2d 1268 (1991), *review denied*, 118 Wn.2d 1021 (1992). If notice fails to apprise parties of the nature and purpose of proceedings the good intentions of officials in satisfying statutory requirements are irrelevant. *Barrie*, at 584-86.

SDM argues that notice was not required prior to the adoption of ordinance 2837 because it was a mere continuation of the legislative process of adopting ordinance 2771 and, thus, benefited from the notice given prior to the adoption of ordinance 2771 satisfying all notice requirements.

The relevant statutes, however, appear to require notice whether the Council's action is in the form of a correction, an amendment, or a rezone. Although neither RCW 35A.63-.070 nor KCC 15.09.050 specifically mentions "corrections" they do require notice for "amendments" to zoning ordinances. Neither do the statutes define "amendment". Where terms are not defined in a statute, the court will look to the plain, ordinary meaning of the words. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). *Webster's* dictionary defines "amendment" as "a correction of errors, faults, etc." *Webster's New World Dictionary of the American Language* 47 (College ed. 1968). Black's Law Dictionary defines "amendment" in pleading and practice as "[t]he correction of an error committed in any process, pleading, or proceeding at law, or in equity . . .." Black's Law Dictionary 74 (6th ed. 1990). Courts have defined the word "amendment" to mean "correction of fault or faults" or "to change by freeing from faults, to correct, to reform." *United States v. Munday*, 211 F. 536, 538 (W.D.

Wash. 1914); *Pacific Gamble Robinson Co. v. Pay'n Save Drugs, Inc.*, 2 Wn. App. 728, 730, 469 P.2d 571, *review denied*, 78 Wn.2d 995 (1970). It appears, therefore, that a correction is included within the meaning of amendment and therefore, requires the same notice as that required for a rezone or an amendment.[3]

We need not reach that question, however, since the record does not support a conclusion that ordinance 2837 was a correction of ordinance 2771. On the contrary, the hearing minutes and transcripts are replete with clarifications by councilmembers indicating that only the Stratford Arms parcel was to be zoned multifamily and that the neighboring Ward property, which had not been developed, was to be zoned single family. The Council later ratified its position as reflected in the record and the city attorney reviewed the Council's minutes before adopting ordinance 2771. Furthermore, during the February 21 hearing at which ordinance 2837 was adopted, the Council engaged in heated debate over the passage of that ordinance with the city attorney, the mayor, and at least three council members taking the position that the ordinance was not a correction.[4]

■■ Where a correction to a zoning ordinance has been considered on appeal the errors have been obvious and

---

[3]At least one case cited by both parties also suggests that corrections require notice. *Hall v. Seattle*, 24 Wn. App. 357, 359-60, 602 P.2d 366 (1979). In *Hall*, the court upheld a decision of the State Civil Service Commission to reconsider its earlier invalidation of a civil service exam, when the Commission realized within 2 weeks of that decision that it had "made a mistake or misperceived certain facts". *Hall*, at 360. The *Hall* court reasoned that

[w]here through fraud, mistake, or misconception of facts [an agency] enters an order which [it] promptly recognizes may be in error, there is no good reason why, on discovering the error, [it] should not, after due and prompt notice to the interested parties, correct it.

*Hall*, at 362 (quoting *Anchor Cas. Co. v. Bongards Co-Op. Creamery Ass'n*, 253 Minn. 101, 106, 91 N.W.2d 122, 126, 73 A.L.R.2d 933 (1958)). Accordingly, the court held that the administrative agency had a limited authority to reconsider its acts so long as no statute, charter, or ordinance prohibited it from doing so. *Hall*, at 361.

[4]At the February 21 session, when the Council moved to adopt ordinance 2837, the Mayor presented the motion as one to "approve Ordinance 2837 amending Ordinance 2771". Clerk's Papers, at 44.

undebated. In *Kates v. Seattle*, 44 Wn. App. 754, 723 P.2d 493 (1986) property owners obtained a building permit to construct a house on the south portion of their property overlooking Lake Washington. The City issued the permit without looking at the official zoning map. The property owners then attempted to build another home at the north end of their property. Neighbors, concerned that the second house would block their view of the lake, appealed the permit. They discovered that the Shoreline Master Plan zoned the property "Conservancy Management" and did not permit development. *Kates*, at 756. The Department of Construction and Land Use (DCLU) suspected a mistake because the City had intended to zone all private property in the area urban residential. *Kates*, at 756-57. DCLU ascertained that a cartographer, under the mistaken belief that the property belonged to the City, had followed instructions for publicly owned property zoning the property "Conservancy Management". After being informed of the error, the Council promptly corrected the map to reflect the zoning originally intended. The City then issued the permit. *Kates*, at 757.

In this case, there was no clear error and the correction was not prompt. Rather, the original ordinance appeared to correctly reflect the Council's original action and the issue at hand was debated for over a year. In light of the record before us, we find that the trial court was correct in concluding that ordinance 2837 was not a mere correction. On the contrary, the facts strongly suggest that ordinance 2837 was a rezone or an amendment to the zoning code. The notice requirements of RCW 35A.63.070 apply to zoning ordinances or amendments to zoning ordinances that regulate "the use of public and private land, buildings, and structures" as well as the "density of population". RCW 35A.63.100(2). KCC 15.09.050 applies to actions "changing the boundaries of zoning districts (rezones which change the official zoning map)" as well as "text amendments which add, delete or otherwise modify the text of this title". Furthermore, on more than one occasion this court has defined rezoning as an amendment to a zoning code to reclassify a

specific parcel of land under a zoning code. *Raynes v. Leavenworth*, 118 Wn.2d 237, 248, 821 P.2d 1204 (1992); *Cathcart-Maltby-Clearview Comm'ty Coun. v. Snohomish Cy.*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981); *Parkridge v. Seattle*, 89 Wn.2d 454, 460, 573 P.2d 359 (1978); *Fleming v. Tacoma*, 81 Wn.2d 292, 299, 502 P.2d 327 (1972).

In this case, ordinance 2837 applies only to a specific parcel of private land, the Ward property; it governs the density of population; it changes the boundaries of the zoning district and the official zoning map; and it modifies the existing Kent zoning ordinance. Ordinance 2837 can, therefore, properly be identified as a rezone or an amendment subject to all statutory and due process notice requirements.

The notice provided by the City prior to the adoption of ordinance 2837 was insufficient under both state and municipal zoning requirements. The only notice provided was in the summary agenda for the February 21 regular session where it referred to "East Hill Annexation Area C — Ordinance" under the heading "other business". There was no mention of a correction, an amendment, a rezone, or of either ordinance 2771 or ordinance 2837. Furthermore, the surrounding landowners were not sent notice as provided in KCC 15.09.050 nor was notice published in local publications as required under RCW 35A.63.070. The trial court was, therefore, correct in holding that the notice failed to meet statutory and due process notice requirements.

SDM raises two final arguments. First, it argues that it was entitled to a balancing of the equities because it had already begun construction and, therefore, had vested rights in the project. As the trial court held, however, the balancing of the equities doctrine is reserved for the innocent developer who proceeds without any knowledge of problems associated with the construction. *Bach v. Sarich*, 74 Wn.2d 575, 582, 445 P.2d 648 (1968). In this case, SDM had full knowledge that the validity of ordinance 2837 and the building permit were hotly contested and that trial was approaching. RUGG had already requested injunctive relief in its petition and, therefore, SDM was apprised of the possibility that any development made pursuant to

ordinance 2837 would be enjoined and proceeded with construction at its own risk.[5] We hold that the trial court properly granted the permanent injunction and did not err by failing to balance the equities.

Finally, SDM argues that the trial court exceeded its jurisdiction when it voided the building permit because RUGG never requested such relief. In its petition, RUGG requested the following relief:

> Issuance, upon request for a stay pursuant to RCW 7.24.190, of a temporary restraining order, preliminary injunction, and permanent injunctive relief against any action by defendants in reliance upon or under the authority of the challenged ordinance or otherwise without compliance with established law.
>
> . . . .
>
> [A] declaration that the City's actions are arbitrary and capricious, erroneous, lack the appearance of fairness, were in violation of the Open Public Meetings Act, violated due process, and other constitutional requirements, are in excess of statutory authority, and are otherwise illegal, null, and void;

Clerk's Papers, at 8-9. We find this language broad enough to justify the Superior Court's invalidation of the permit.

Since we find that the Council violated statutory and due process notice requirements in adopting ordinance 2837, it is unnecessary to decide whether the City also violated the appearance of fairness in enacting that ordinance.

We affirm the trial court.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, and JOHNSON, JJ., concur.

After modification, further reconsideration denied May 17, 1994.

---

[5]Generally, the equities must be very compelling to avoid an injunction to correct a clear violation of a zoning ordinance. *Eastlake Comm'ty Coun. v. Roanoke Assocs.*, 82 Wn.2d 475, 497, 513 P.2d 36, 76 A.L.R.3d 360 (1973); *Radach v. Gunderson*, 39 Wn. App. 392, 398-99, 695 P.2d 128, *review denied*, 103 Wn.2d 1027 (1985); *Foster v. Nehls*, 15 Wn. App. 749, 753-54, 551 P.2d 768 (1976), *review denied*, 88 Wn.2d 1001 (1977); *Mahon v. Haas*, 2 Wn. App. 560, 565, 468 P.2d 713 (1970).