[No. 39630-7-I.  Division One.  May 4, 1998.]

THE STATE OF WASHINGTON, *Petitioner*, v. TIMOTHY G. DOLSON, *Respondent*.

*David S. McEachran, Prosecuting Attorney,* and *Eric Richey, Deputy,* for petitioner.

*Lee P. Grochmal* of the *Whatcom County Public Defender's Office,* for respondent.

ELLINGTON, J. — We granted discretionary review to decide whether the superior court erred in reversing Timothy Dolson's conviction for first degree driving while license suspended. Reversal was premised on the theory that the

Department of Licensing sent Dolson's notice of license revocation to the wrong address. The notice was sent to an address that Dolson had recently provided to an arresting officer, rather than to an address formally provided by Dolson under RCW 46.20.205. Dolson bears the burden of keeping his address current with the Department, and there is no evidence that he provided the State with any other address that would have been more likely to effectuate notice. Sending notice to Dolson's most recently known address did not constitute a due process violation nor render the notice ineffective. Further, Dolson has demonstrated no prejudice whatsoever, and, in any event, Dolson had constructive notice of his status as a habitual traffic offender. His conviction is reinstated and the case is remanded for sentencing.

## Facts

Dolson has a long history of driving troubles. He received his license in 1982. In 1986, he "lost" his license when the Department of Licensing "took it" after a DUI conviction. In 1989, his license was revoked for refusing a breath test. His license also formally expired in 1989 and he never received a new one.

In May 1990, the Department revoked Dolson's driver's license because he was a habitual traffic offender as defined by RCW 46.65.020 and RCW 46.20.342. The Department sent him a revocation notice by certified mail, using an address he provided in September 1989 when cited for driving with a revoked license. The notice was returned unclaimed.

Dolson kept driving, which inevitably led to further problems. From 1992 to 1995, he was convicted four times for driving while license suspended/revoked. Each conviction required an additional year of license revocation. *See* RCW 46.20.342(2)(a).

On June 19, 1995, the Department sent Dolson a letter informing him that his license was suspended for an ad-

ditional year because of a recent conviction for driving while license suspended in the first degree. The letter informed Dolson his license would remain invalid until he took action to reinstate it. *See* RCW 46.65.070, .080. He took no such action.

Dolson was again cited for driving while license suspended on July 31, 1996, which led to another first degree conviction. Dolson appealed, and the superior court reversed, on the theory that the original 1990 revocation letter was mailed to the wrong address, depriving Dolson of due process. We granted discretionary review.

Discussion

■ ■ The sole question is whether Dolson's original license revocation offended due process guaranties. The State bears the burden of proving the revocation constitutional. *State v. Storhoff*, 133 Wn.2d 523, 527, 946 P.2d 783 (1997). When the alleged due process violation does not on its face demonstrate prejudice, the defendant must at least make an allegation of prejudice. *See id.* at 527-28, 532.

■ Under the Habitual Traffic Offender Act, license revocation is mandatory when a person is convicted of three occurrences of driving with a suspended or revoked license within a five-year period. RCW 46.65.020(1)(c); *State v. Vahl*, 56 Wn. App. 603, 609, 784 P.2d 1280, *review denied*, 114 Wn.2d 1021 (1990). Due process requires that the licensee be afforded notice and an opportunity to be heard. *See, e.g., Storhoff*, 133 Wn.2d at 527; RCW 46.65.065; *Bell v. Burson*, 402 U.S. 535, 539-40, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). The notice must be reasonably calculated to inform the affected party of the pending action and of the opportunity to object. *See, e.g., State v. Baker*, 49 Wn. App. 778, 781, 745 P.2d 1335 (1987) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

The Department of Licensing is required to provide notice of revocation and the right to a formal hearing by mail-

ing a letter to the licensee's "address of record as maintained by the department." RCW 46.65.065. In *State v. Baker*, the court held that due process required sending the notice to the latest address known to the Department, which in Baker's case was an address given at the time of a recent traffic infraction. *Baker*, 49 Wn. App. at 779-82.

In response to *Baker*, the Legislature provided that the exclusive means of changing the Department's record of a licensee's address is by written advice from the licensee. Notices, including notice of revocation, are deemed effective if mailed to the last address formally provided. RCW 46.20.205 (1989 amendment). The Washington State Supreme Court has held that compliance with the new statute satisfies due process, regardless of whether the notice is actually received. *See Storhoff*, 133 Wn.2d at 526 n.2.

In Dolson's case, the Department followed the *Baker* procedure instead of the (then) new statute. The Department mailed the May 1990 notice to the address Dolson provided when arrested in September 1989 for driving while license suspended. Dolson claims the notice was ineffective because he did not formally provide this address to the Department under RCW 46.20.205.

■■ Under any commonsense analysis, the Department acted diligently to attempt to give Dolson notice at his last known address. Dolson essentially argues that the Department acted too diligently. Dolson does not explain where the Department should have sent notice, nor does he make any allegation of prejudice. He simply characterizes the technical statutory violation as a constitutional violation, without analysis. The superior court apparently agreed.

We do not. First, Dolson demonstrates no prejudice whatsoever. Prejudice must be demonstrated before procedural violations will be held to be due process violations. *Storhoff*, 133 Wn.2d at 532. Dolson claims he obtained an identification card sometime after 1986, but does not indicate when, nor what address he provided, much less that the address provided then would have resulted in no-

tice to him in 1990. Nor does he suggest that he provided an address at any time between the September 1989 citation and the mailing of notice of revocation in May 1990. His numerous driving violations document at least six changes of address from 1991 to 1996. Nothing suggests he formally apprised the Department of these changes. The Department took reasonable steps in its efforts to notify Dolson.

In contrast, Dolson has neither demonstrated that he complied with his statutory duty to update his address nor suggested that he would have received the revocation notice had it been delivered to the last address he directly provided. There is thus no hint of prejudice here. The superior court erred in finding a due process violation.

As indicated, the Department's procedure was far more likely to result in actual notice to Dolson than was the statutory procedure. Dolson argues, however, that absent strict compliance with statutory process, revocation is ineffective. We reject this argument. In *Storhoff*, the notices not only were not received, they were inaccurate as to the statutory time period for requesting a hearing. The court held the violations minor and found no due process violation.

Cases cited by Dolson do not support his position here. In *Responsible Urban Growth Group (R.U.G.G.) v. City of Kent*, 123 Wn.2d 376, 389, 868 P.2d 861 (1994), the court found that Kent did not satisfy due process notice requirements when making a zoning decision. Kent did not comply with two statutes by failing to send notice to surrounding landowners and by failing to publish notice. *Id.* at 389. The court implied, however, that had the parties received actual notice, the statutory violations would have been moot: "If notice fails to apprise parties of the nature and purpose of proceedings[,] the good intentions of officials in satisfying statutory requirements are irrelevant." *Id.* at 386.

In *Fraser v. Beutel*, 56 Wn. App. 725, 727, 731-33, 785 P.2d 470, *review denied*, 114 Wn.2d 1025 (1990), the court

held that failure to comply with the statutorily mandated five-day written notice requirement for a "reasonableness of settlement" hearing rendered the reasonableness determination nonbinding on a nonsettling released defendant. There, the nonsettling defendant received only one-day telephonic notice, which the court held was insufficient because there was no excuse for untimely notification and there was no evidence of waiver. The court thus distinguished precedent, finding that waiver and actual notice could be used to effectively satisfy the written notice requirement when "no prejudice ensues." *Id.* at 732-33 (quoting and distinguishing *Zamora v. Mobil Oil Corp.*, 104 Wn.2d 211, 222, 704 P.2d 591 (1985) (waiver case) and also distinguishing *Pickett v. Stephens-Nelsen, Inc.*, 43 Wn. App. 326, 329, 717 P.2d 277 (1986) (actual notice case)).

In *In re Dependency of C.R.B.*, 62 Wn. App. 608, 619, 814 P.2d 1197 (1991), this court held a default order terminating a mother's parental rights violated "due process requirements." In that case, the mother's attorney, but not the mother, appeared at a "termination of [notice by] publication" hearing. There, the Department of Social and Health Services presented for the first time a motion for order of default and a proposed order for termination of the parent-child relationship. The mother's attorney argued that termination should be decided by a trial on the merits, which had already been scheduled. The court disagreed and entered a default order. This court reversed on a number of grounds: (1) the default order was improper because an attorney appeared; (2) the default order was void for improper notice—CR 55(a)(3) required five days' notice and the mother's attorney received none; and (3) the evidence did not satisfy statutory "clear, cogent, and convincing" requirements. *Id.* at 616-19.

When discussing the improper notice, the *C.R.B.* court remarked on the fact that although the mother's attorney was aware that there would be a contested hearing, the purpose of the hearing was to obtain the court's permission

to commence proceedings to terminate the mother's parental rights—not to actually terminate them. *Id.* at 618. Thus, there was no actual notice of the proposed action.

The above cases do not provide support for the premise that Dolson's revocation was ineffective because the Department did not strictly follow RCW 46.20.205. The Legislature amended this statute to *lessen* the Department's obligations in tracing a licensee's address. Despite this, the Department continued to track Dolson's address for him. Thus, the Department did more than the statute required, not less. While the statute's notice requirements were arguably technically violated, the spirit of the statute was not. And Dolson had actual notice of the revocation and did nothing about it. *R.U.G.G.* and *Fraser* imply that, absent a showing of prejudice, a procedural defect in the face of actual notice should not invalidate the action. In *C.R.B.*, there was actual prejudice because the mother had neither notice nor opportunity to present her case against termination of her parental rights.

■ Even if the 1990 revocation notice were constitutionally infirm, reversal was improper because Dolson had constructive notice of his habitual offender status. A defendant is presumed to know the law and facts that would have been discovered upon reasonable inquiry. *See Vahl*, 56 Wn. App. at 609. The test is whether the licensee " 'has information which would lead a reasonable [person] . . . to believe that facts exist which facts are described by a statute defining an offense.' " *Id.* (alteration in original) (quoting RCW 9A.08.010(1)(b)(ii)). Vahl was held to have received at least constructive notice of license revocation because letters were sent to her correct address. *Id.*

Dolson testified that his license was suspended. He has not held a valid license since 1986. Since then, the Department has sent him numerous letters explaining the suspended or revoked status of this license. He does not deny receiving these. The letter sent on July 19, 1995

informed him that his license was suspended for one year based on a 1995 conviction for driving while license suspended in the first degree, a charge which requires that the violator be a habitual offender driving with a previously revoked license. *See* RCW 46.20.342(1)(a).

Dolson also received numerous traffic citations. In the span of three years, four of these citations resulted in convictions for driving while license suspended or license revoked. These convictions cannot be collaterally attacked even if the original revocation letter was ineffective, *see State v. Petersen*, 16 Wn. App. 77, 79, 553 P.2d 1110 (1976), and by operation of law, they require a finding that Dolson is a habitual offender. *See* RCW 46.65.020(1)(d).

The letters, citations, convictions, and Dolson's own awareness that his license was suspended provide him with constructive notice of his habitual offender status. He had an opportunity to raise his due process claim during the adjudication of his first conviction for driving while license revoked in the first degree in 1992. Having had notice and opportunity, he cannot seriously argue a due process violation here.

The superior court order reversing the conviction is vacated. The case is remanded for sentencing.

COLEMAN and BECKER, JJ., concur.

Review granted at 137 Wn.2d 1001 (1999).