[No. 8165–2–II. Division Two. August 5, 1986.]

WILLIAM W. KATES, ET AL, *Appellants,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Roger M. Leed,* for appellants Kates, et al.

*Thomas C. McCarthy,* for appellant Kitto.

*Douglas N. Jewett, City Attorney,* and *Judith B. Barbour, Assistant,* for respondent Seattle.

*George Kresovich* and *Hillis, Cairncross, Clark & Martin, P.S.,* for respondents Martin.

*Kenneth O. Eikenberry, Attorney General,* and *Jay Manning, Assistant,* for respondent State.

WORSWICK, C.J.—William W. Kates, his wife, and two neighbors appeal a judgment dismissing their action for damages and injunctive relief against the City of Seattle and John M. and Tana Martin. They contend that the City issued the Martins two building permits in violation of the Shoreline Management Act of 1971 and state subdivision statutes. We hold that both building permits comply with the shoreline management act, but that the second permit

was issued in violation of subdivision requirements. We therefore affirm the judgment in part, and reverse in part.

In 1979, John Martin bought an undeveloped parcel of land in Seattle's Mount Baker neighborhood. The parcel lies on a bluff overlooking Lake Washington. Its proximity to the lake brings it within the purview of Seattle's Shoreline Master Plan, adopted pursuant to the Shoreline Management Act of 1971, RCW 90.58; Seattle Municipal Code (SMC) 24.60.280.

At the time Martin bought the property, the Shoreline Master Plan zoned the land Conservancy Management. Martin, unaware of the designation, applied for a building permit for the south part of the property. The City issued the permit; it apparently did not check Martin's application against the official zoning maps. Martin and his wife began building a house in June 1980; they moved into it a year later, and lived there until 1983.

In December 1981, the Martins applied to the Department of Construction and Land Use (DCLU) for a building permit for the north part of the property. At the same time, they asked DCLU for a variance from local access requirements, as this part of the property had no street access.

The Martins' plans roused the ire of their neighbors, who were concerned that a building on the north part of the property would block their view of the lake. When DCLU granted the Martins' variance request, the neighbors appealed to a hearing examiner. The neighbors testified at the hearing that the proposed house would spoil their view, block a common footpath to the lake, and cause traffic congestion. In passing, Mr. Kates suggested that the Martins could obviate the need for a variance by executing an access easement from the south part to the north part of the property. The hearing was continued pending further developments, and was never resumed. The Martins did execute an easement from the south part to the north part and persuaded DCLU that a variance was unnecessary.

Before DCLU could issue the building permit, however, it discovered that the official city zoning map designated

the Martins' property Conservancy Management. Under the Seattle Shoreline Master Program, this designation meant the property could not be developed as Martin intended. *See* SMC 24.60.335. DCLU quickly discovered that the City Council had intended the Martin property, along with the other private property in the neighborhood, to be zoned Urban Residential, a designation permitting residential construction. SMC 24.60.340. The actual designation resulted from a cartographer's error in incorporating shoreline designations onto the official zoning map. The cartographer had mistakenly thought the Martin property was city property, and, following the instructions for publicly owned property, had designated it Conservancy Management.

The City Council, informed of this error, promptly attempted to correct it. Without prior notice or hearing, the Council reclassified the property Urban Residential, consistent with its original intent. DCLU then issued the Martins a building permit. The Martins began construction immediately. They completed the house, and moved in during the litigation that followed.

Soon after the City issued this building permit, appellants sued the Martins and the City in King County Superior Court.[1] Their complaint alleged that (1) both building permits were invalid under the Seattle Shoreline Master Program and the shoreline management act, because they were issued despite the Conservancy Management designation; (2) the amendatory ordinance was enacted in violation of due process, and thus did not cure the invalid building permits; (3) the second building permit violated the shoreline management act, because the Martins failed to apply for a substantial development permit; and (4) the second building permit was issued in violation of state and local subdivision laws.

---

[1]Because the complaint challenged portions of Seattle's Shoreline Master Plan, the Department of Ecology was made a party. *See Harvey v. Board of Cy. Comm'rs,* 90 Wn.2d 473, 584 P.2d 391 (1978).

At this point, the City Council reenacted the amendatory ordinance, this time providing prior notice and a hearing. The Department of Ecology, acting pursuant to the shoreline management act, approved and filed the change. The parties agree that the property is now properly zoned Urban Residential.

The parties submitted the case to the court on stipulated facts and documentary evidence. Both parties moved for summary judgment. The trial court denied appellants' motion in toto. It granted respondents' motion in part, holding that appellants were barred from requesting destruction or alteration of the south house, the first built. This ruling has not been appealed.

After considering the evidence, the court dismissed the complaint with prejudice. It held that the building permits complied in all respects with the shoreline management act and state and local subdivision laws.

Appellants first argue that both building permits are inconsistent with the Seattle Shoreline Master Plan, which designated the property Conservancy Management, and thereby violated the shoreline management act. We find no merit in this argument.

The unchallenged findings of fact establish that (1) the original Conservancy Management designation was the result of cartographical error, (2) the intended designation, Urban Residential, permitted residential construction, and (3) the City Council corrected the cartographical error. These findings are verities on appeal. *In re Santore,* 28 Wn. App. 319, 323, 623 P.2d 702 (1981). They support the conclusion that the two houses comply with the Master Plan and the shoreline management act.

Appellants argue that it is irrelevant whether the houses presently comply with the Plan. They assert that if the building permits were invalid at the time they were issued, they were void ab initio, and cannot be rehabilitated by subsequent zoning changes. They rely on language to that effect in *Eastlake Comm'ty Coun. v. Roanoke Assocs.,* 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973). They seem

to contend that the Martins must reapply for the building permits.

In *Eastlake Comm'ty Coun.*, the plaintiffs sought an injunction against construction violating current zoning laws. The defendant developer defended on the ground that he had a vested right to proceed, as the building permit was issued in compliance with the zoning laws in effect at the time of his application. The court rejected this defense, however, finding that he had no vested right because the original permit had several defects, and was therefore invalid. The court declared that "where a building permit is found to be invalid it is void and confers no rights." 82 Wn.2d at 483.

*Eastlake Comm'ty Coun.* simply held that the vested rights doctrine does not apply unless the original permit is lawfully issued. This holding applies when the development is inconsistent with *current* zoning laws, and the developer claims vested rights under former law. The rationale is that a litigant has no right to benefit from unlawful administrative conduct when the public interest will suffer. *Eastlake Comm'ty Coun.*, 82 Wn.2d at 475. The opposite situation exists here. The two building permits comply with current zoning laws. Thus, their issuance does not impair any public interest. Further, the City is not trying to rescind the permits, so no claim of vested rights arises. *Eastlake Comm'ty Coun.* does not apply. Insofar as zoning is concerned, we hold the permits valid. We will not require the City to go through the pointless exercise of reissuing them for this reason.

Appellants next argue that the Martins were required under the shoreline management act to apply for a substantial development permit for the north house. They contend that the failure to obtain a substantial development permit invalidates the second building permit. We find no merit in this contention.

The shoreline management act requires developers to obtain a substantial development permit before building a structure costing more than $1,000 on shoreline property.

RCW 90.58.140(2). RCW 90.58.030(3)(e)(vi) exempts from this rule

Construction on wetlands by an owner, lessee, or contract purchaser of a single family residence for his own use or for the use of his family, which residence does not exceed a height of thirty–five feet above average grade level . . .

The Martin property is wetlands, because it lies less than 200 feet from the shoreline. RCW 90.58.030(2)(f). The City argues that both the Martins' houses fell within the family residence exclusion and thus did not require a substantial development permit. Appellants contend that the Martins were not entitled to use the exclusion twice. We agree with the City.

 Whether a particular development falls within the family residence exemption is a question of fact. The trial court made unchallenged findings that the Martins initially intended to live in the south house, and did live there for 2 years. When their children were born, they found the house too small and built the north house intending to live there. They have lived there ever since. As a factual matter, the Martins intended each residence, at different times, for their own use. Both houses thus fall within the family residence exemption. Contrary to appellants' contention, the statutory language does not imply that the exclusion may be used only once per owner.

Appellants further argue that the City erred in issuing the second building permit without requiring the Martins to secure an access variance. They did not raise this issue in superior court. We will not consider it. RAP 2.5(a).

Appellants argue that the second permit is invalid for another reason. They assert that when the Martins built a second house on their land, they effectively subdivided the property, and in doing so failed to comply with state and city subdivision requirements, whereby owners must submit preliminary plats for approval before obtaining a building permit. We agree.

RCW 58.17 regulates most subdivision of land in the

state. The basic definition of a subdivision appears in RCW 58.17.020(1). Short subdivision, the concept applicable here, is defined in RCW 58.17.020(6) as "the division or redivision of land into four or fewer lots, tracts, parcels, sites or divisions for the purpose of sale, lease, or transfer of ownership: . . ." The Martins divided their property into two parcels, sold off one and built on the other, thus effecting a short subdivision.

Primary responsibility for regulating short subdivisions lies with local governments. RCW 58.17.060 directs local legislative bodies to enact procedures for summary approval of short plats or short subdivisions. RCW 58.17.195 provides that no short plat may be approved unless the local government makes a formal written finding of fact that the proposed short subdivision conforms with applicable zoning ordinances or other land use controls.

In accord with RCW 58.17.060, the Seattle City Council enacted summary procedures for approving short subdivisions. SMC 23.24. In essence, the ordinances require those dividing their property to submit preliminary plats to the Director of DCLU. SMC 23.24.010. The Director may either approve or deny the proposed subdivision. This decision is ultimately subject to judicial review. RCW 58.17.180.

Respondents concede that the Martins did not submit a preliminary short plat for approval. Appellants contend that this failure renders the building permit invalid.

Before reaching the merits, we must determine the basis for reviewing the Director's decision that a preliminary plat was unnecessary. RCW 58.17 provides no basis for judicial review; neither does the Seattle Municipal Code. Both contemplate judicial review only for decisions to approve or deny plats, not for decisions to dispense with plats. RCW 58.17.180; SMC 23.24.050.

However, we have inherent power to review illegal or manifestly arbitrary and capricious governmental acts that affect fundamental rights. *Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 658 P.2d 648 (1983). The City urges us not to invoke this power, contending that appel-

lants failed to exhaust an available administrative remedy. It relies on SMC 23.88.020, which provides that any person may seek an official, appealable, interpretation of a local zoning or land use regulation. The City contends that had appellants sought an interpretation of the subdivision ordinances, the Director would have replied with an interpretation holding that a preliminary plat was unnecessary. That interpretation, argues the City, would have been reviewable. We are not persuaded.

As we read SMC 23.88.020, it applies to individuals contemplating development who are concerned that a particular regulation will interfere with their plans. It provides a means by which these potential developers can discover DCLU's interpretation of the regulations *before* they apply for permits or begin construction. Appellants had no reason or opportunity to invoke SMC 23.88.020. They never sought clarification of an ambiguous regulation, much less approval of construction. By the time they realized that the meaning of the word "subdivision" in SMC 23.24 was in question, DCLU had already issued the permit, and litigation was underway. At that point, it would have been useless to seek an interpretation. Therefore, appellants had no administrative remedies. *Orion Corp. v. State,* 103 Wn.2d 441, 693 P.2d 1369 (1985). We elect to review this issue.[2]

The record plainly shows that the City's action in issuing the second permit was illegal. The Martins never filed a preliminary plat for approval; the City did not make formal written findings that the proposed short subdivision conformed with applicable land use laws. *See* RCW 58.17.195. The Director of DCLU did not even make findings supporting his decision not to require a preliminary plat.

The City asserts that the state and municipal subdivision laws do not apply here. It reasons that the Martins did not

---

[2]The subdivision statutes manifest a legislative judgment that neighbors affected by particular developments have a strong interest in the developers complying with subdivision and zoning laws. RCW 58.17.090; RCW 58.17.180. It follows that neighbors have a fundamental right to proper procedures in approving subdivisions.

subdivide their property, because the property was already effectively subdivided when they bought it. We disagree.

■ The record shows that the land was originally platted as several lots. The plat was later vacated, and the land was never subdivided. While some of the original lot lines persist in various legal descriptions relating to the property, it has never been sold or otherwise dealt with by reference to the parcels represented by those lot lines. Only when the Martins developed the north part and then sold the south part was the property actually subdivided. At that point, the Martins were required by statute and city code to file a preliminary short plat for approval. Their failure to do so invalidated the building permit subsequently issued.

At oral argument, the City contended that it complied with the spirit of the subdivision statute in that the Director of DCLU actually considered whether the proposed subdivision complied with land use regulations. However, nothing in the record supports this claim. RCW 58.17.195 requires formal written findings. We can find none. The building permit was wrongfully issued.

This does not mean, however, that appellants are entitled to damages or injunctive relief. Whether construction of the Martin house under the second permit justifies such relief must await a determination of whether there has been a substantive violation of the subdivision laws. No such determination has yet been made.

Affirmed in part; reversed in part, as indicated herein. Remanded with permission to the Martins to submit an appropriate subdivision application, and with directions that the City act thereon as required by law.

PETRICH and ALEXANDER, JJ., concur.