[No. 25212–7–I.   Division One.   June 24, 1991.]

R/L ASSOCIATES, INC., *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*

---

*Richard B. Sanders*, for appellant.

*Mark H. Sidran, City Attorney*, and *Pamela K. James, Assistant*, for respondent.

PEKELIS, J.—R/L Associates, Inc. (R/L) appeals the dismissal of its petition for a writ of mandamus to compel the City of Seattle (City) to issue a building permit for the construction of a single–family residence. R/L contends that the trial court erred in concluding that it had failed to exhaust an available administrative remedy. We affirm.

## I

On August 16, 1989, R/L applied to the Department of Construction and Land Use (DCLU) for building permits to

construct single–family residences on two separate parcels of property located at 13011 Corliss Avenue North and 1912 N.E. 115th Street. Both properties are zoned SF 7200 requiring a minimum lot size of at least 7,200 square feet per dwelling. Neither parcel satisfies this requirement.

After an initial review, DCLU refused to process the permit applications.[1] DCLU issued a computer contact number to R/L for the 115th Street property. However, DCLU halted further processing of the application after conducting additional research and determining that this parcel was not a legal building site.

DCLU informed R/L that it could request a legal building site interpretation from the Director of DCLU pursuant to Seattle Municipal Code (SMC) 23.88.020. This section provides in part:

> A. A decision by the Director as to the meaning, application or intent of any provision of Title 23, Land Use Code, or Title 24, Zoning and Subdivisions, as it relates to a specific piece of property is known as an "interpretation." An interpretation may be requested in writing by any person or may be initiated by the Director.
>
> . . . .
>
> E. The Director's interpretation may be appealed subject to the following:
>
> . . . .
>
> 3. The Hearing Examiner shall consider the appeal in accordance with the procedure established for hearing contested cases in the Administrative Code, Chapter 3.02.

R/L elected not to seek an interpretation from the Director. Instead, on October 18, 1989, R/L petitioned the superior court for a writ of mandamus directing the City to issue the requested building permit. R/L contended that the City had a legal duty to grant the permit because the parcel was within the minimum lot size exception stated in SMC 23.44.010(B)(3),[2] which provides in part:

---

[1] R/L has advised this court that a permit has been issued for the Corliss Avenue North property. Hence, the status of this property is no longer at issue.

[2] At oral argument, R/L conceded that at this point, it is not necessarily entitled to the permit itself, but is entitled to an order compelling the City to process its application since the permit satisfies SMC 23.44.010(B)(3).

B. Exceptions to Minimum Lot Area. A lot which does not satisfy the minimum lot area requirements of its zone may be developed or redeveloped as a *separate building site* according to the following:

. . . .

(3) The lot was *established as a separate building site* in the public records of the county or City prior to July 24, 1957 by deed, contract of sale, mortgage, property tax segregation, platting or building permit, and [one of three additional conditions are met.]

(Italics ours.) The City responded that R/L was required to obtain an interpretation from the Director before seeking judicial review.

On November 6, 1989, the trial court dismissed R/L's petition "with prejudice for failure to exhaust available administrative remedies". This timely appeal follows.

II

R/L contends that it has no adequate administrative remedy to exhaust because there is no defined procedure under the SMC for appealing the denial of a building permit. In fact, R/L claims that the SMC makes such a decision expressly nonappealable.

We note first that whether an action for mandamus lies depends on R/L's ability to show that the City had "a clear duty to act". *Burg v. Seattle,* 32 Wn. App. 286, 290, 647 P.2d 517, *review denied,* 98 Wn.2d 1007 (1982). Mandamus is an extraordinary remedy and should be used sparingly. *Burg,* 32 Wn. App. at 289–90. It will not lie to compel the performance of a discretionary act. *State ex rel. Burlington Northern, Inc. v. State Utils. & Transp. Comm'n,* 93 Wn.2d 398, 410, 609 P.2d 1375 (1980).

Here, the basis for R/L's mandamus action is its claim that the 115th Street property fits within the minimum lot size exception in SMC 23.44.010(B)(3). In support of its claim, R/L relies upon two statutory warranty deeds showing that the property was transferred twice before 1957. The first deed reveals that Walter and Helen Youatt deeded the west 105 feet of lot 21 to Alex Carlson and retained the remainder of the subject lot for themselves.

The second deed indicates that on November 19, 1956, Youatt deeded and recorded the remainder of lot 21 to Paul and Alice Johnson.

R/L contends that these deeds demonstrate conclusively that "the lot was established as a separate building site", and therefore satisfy exception (B)(3). The City takes the position that, while the deeds established the 115th Street lot as a separate site, there is no evidence that the lot was established as a separate *building* site.

For mandamus to issue, R/L must show a clear right. We conclude, however, that neither deed *clearly* establishes that the 115th Street property falls within the minimum lot size exceptions of SMC 23.44.010(B). On their face, the deeds do not demonstrate whether either conveyance was made for the express purpose of establishing a "separate building site". Similarly, the title report, 1988 tax statement, and real estate information services documentation which R/L also relies upon, reveal nothing about the status of the property as a separate *building* site. We agree with the City that the term "building" must be presumed to have some meaning independent of the term "site".

This being the case, the trial court could not determine from the submitted documentation that R/L was entitled to one of the minimum lot exceptions as a matter of right. This in itself justifies the trial court's refusal to grant the writ of mandamus.

In addition, we also conclude that R/L did have an appropriate administrative remedy available which it failed to exhaust, making judicial review premature. It has long been the policy of this state "that the judiciary should give proper deference to that body possessing expertise in areas outside the conventional experience of judges." *Retail Store Employees Union, Local 1001 v. Washington Surveying & Rating Bur.,* 87 Wn.2d 887, 906, 558 P.2d 215 (1976). Hence, "when an adequate administrative remedy is provided, it must be exhausted before the courts will intervene." *Orion Corp. v. State,* 103 Wn.2d 441, 465, 693 P.2d

1369 (1985) (*Orion* I) (citing *Wright v. Woodard,* 83 Wn.2d 378, 381, 518 P.2d 718 (1974)).

As the Supreme Court has noted, there are several policies underlying the exhaustion doctrine. The doctrine (1) prevents against premature interruption of the administrative process, (2) allows the agency to develop the necessary factual background on which to base a decision, (3) allows the exercise of agency expertise, (4) provides a more efficient process and allows the agency to correct its own mistake, and (5) insures that individuals are not encouraged to ignore administrative procedures by resorting to the courts. *Citizens for Clean Air v. Spokane,* 114 Wn.2d 20, 30, 785 P.2d 447 (1990); *Orion,* 103 Wn.2d at 456–57 (citing *South Hollywood Hills Citizens Ass'n v. King Cy.,* 101 Wn.2d 68, 74, 677 P.2d 114 (1984)).

Whether an exception to the minimum lot size should be permitted under the circumstances presented here is a determination which necessarily merits the attention of the administrative process. R/L raises a number of arguments against application of the exhaustion of administrative remedies requirement. First, R/L contends that it has no administrative remedy to exhaust because the denial of a building permit is a nonappealable decision. We disagree.

Under the SMC, land use decisions are broken down into five types of decisions based on the amount of discretion and level of impact associated with each decision. SMC 23.76.004(A). "**Type I** decisions are nonappealable decisions made by the Director which require the exercise of little or no discretion." SMC 23.76.004(B). "The following decisions are Type I decisions which are nonappealable: 1. Establishment or change of use for *uses permitted outright*". (Italics ours.) SMC 23.76.006(B). As we have concluded, whether a parcel falls within the minimum lot size exception is not at all clear. Thus, while R/L correctly points out that nondiscretionary decisions cannot be appealed, we are unable to conclude from this record that the use R/L seeks is "permitted outright". Moreover, what

proof would satisfy the requirement that the lot was previously established as a "separate building site" is precisely the type of decision which comes within the expertise of DCLU.

R/L next asserts that an interpretation of the Director does not constitute an appeal procedure. Rather, it claims, an interpretation is the SMC's analogue to a declaratory judgment action that may be utilized by a developer before applying for a permit, citing *Kates v. Seattle*, 44 Wn. App. 754, 723 P.2d 493 (1986).

*Kates* is distinguishable. There, various landowners brought an action for damages and injunctive relief against the City of Seattle and a neighboring landowner. They contended, *inter alia*, that the City issued two building permits to the landowner in violation of state and local subdivision laws. The City argued that the plaintiffs had failed to exhaust their administrative remedies because they did not request an interpretation from the Director. In rejecting the City's argument, this court stated:

> As we read SMC 23.88.020, it applies to individuals contemplating development who are concerned that a particular regulation will interfere with their plans. It provides a means by which these potential developers can discover DCLU's interpretation of the regulations *before* they apply for permits or begin construction. Appellants had no reason or opportunity to invoke SMC 23.88.020. They never sought clarification of an ambiguous regulation, much less approval of construction. By the time they realized that the meaning of the word "subdivision" in SMC 23.24 was in question, DCLU had already issued the permit, and litigation was underway. At that point, it would have been useless to seek an interpretation.

*Kates*, 44 Wn. App. at 762.

In *Kates* it was useless for the plaintiffs to request an interpretation of the local subdivision ordinances because the building permit had already been issued to the landowners and the lawsuit commenced. Here, however, R/L had every reason to seek an interpretation from the Director since it was the party whose permit application was denied. R/L also had the opportunity to request an interpretation. DCLU expressly notified R/L that it could

do so and, in fact, R/L has invoked this very process on prior occasions. *See R/L Assocs., Inc., v. Seattle,* cause 23046–8–I, noted at 56 Wn. App. 1069 (1990). Thus, the interpretation process outlined in SMC 23.88 constitutes an available administrative appeal.[3]

Finally, we believe that requiring R/L to use the interpretation process promotes several policies underlying the exhaustion doctrine. First, a formal interpretation request would allow DCLU to conduct further research into the public records. Second, the evaluation of public records within the context of the SMC allows the exercise of agency expertise. Third, DCLU would be allowed to correct its own mistake if, as a result of the interpretation request, the parcel was found to be a legal building site.

We sympathize with R/L's concern about the apparently excessive amount of time it takes to receive a decision on a request for an interpretation from DCLU and to pursue the subsequent appeal to the hearing examiner if the Director's decision is adverse. However, the facts presented to the court in this case demonstrate the reason for requiring exhaustion of these remedies in the absence of a showing that exhaustion would be a futile act. *Citizens for Clean Air,* 114 Wn.2d at 30. The City has rejected the deeds R/L relies on to prove that "[t]he lot was established as a separate *building* site . . . prior to July 24, 1957". (Italics ours.) Because so little information has been developed at the administrative level, we are unable to discern what the City would deem adequate to satisfy the requirement of SMC

---

[3]R/L also makes the argument that because the ordinance does not characterize the Director's interpretation as an "appeal", this procedure need not be exhausted. However, whether a remedy has been designated as an "appeal" is not determinative. Where there are "administrative *mechanisms* available [which] can alleviate the harmful consequences of the governmental activity at issue, a litigant must first pursue those remedies" before seeking judicial relief. (Italics ours.) *Orion,* 103 Wn.2d at 456 (citing *Ackerley Communications, Inc. v. Seattle,* 92 Wn.2d 905, 911, 602 P.2d 1177 (1979) (variance available but not sought), *cert. denied,* 449 U.S. 804 (1980); *Lange v. Woodway,* 79 Wn.2d 45, 48, 483 P.2d 116 (1971) (variance available but not sought)). Here, the Director's interpretation constitutes such a remedy.

23.44.010(B)(3). Until we know what the City does consider adequate, the courts are unable to evaluate the reasonableness of the City's position. We therefore require exhaustion of the remedies provided by the City not only to further the policies underlying the exhaustion doctrine, but also as an essential predicate to effective, accurate judicial review.

Affirmed.

GROSSE, C.J., and AGID, J., concur.