[No. 33384-4-I.   Division One.   September 25, 1995.]

Larry G. Smoke, et al., *Respondents*, v. The City of Seattle, *Appellant*.

*Mark H. Sidran, City Attorney,* and *Judith B. Barbour* and *Robert D. Tobin, Assistants,* for appellant.

*Richard B. Sanders,* for respondents.

WEBSTER, J. — The City of Seattle, which denied two land use and building permits to the Smokes, Qualls, and Smoke Quall, Inc., appeals a judgment for damages awarded because the denials were found to be unlawful under RCW 64.40. Seattle contends the action for damages under RCW 64.40 should have been dismissed because the Smokes, Qualls, and Smoke Quall, Inc. [collectively hereafter Smoke] failed to exhaust their administrative remedies prior to filing suit. On appeal, Smoke contends that the judgment should be affirmed under 42 U.S.C. § 1983, a cause of action dismissed by the trial court.

We reverse the judgment, and hold that recovery of damages under RCW 64.40 requires exhaustion of all administrative remedies. We decline to review Smoke's contention of error relating to 42 U.S.C. § 1983 because the order dismissing that cause of action was not cross-appealed.

## FACTS

### Property Prior To Purchase By Smoke

Seattle City Light owned Lots 1-4 in Block 3 of Stander's Addition, Seattle. In 1983, Seattle granted METRO an easement for a power rectifier (an electrical substation) to straddle Lots 1-2; the easement was recorded. Lots 1 and 2 each had 3,600 square feet, and the power rectifier occupied approximately thirteen to fourteen percent of the 7,200 total square footage. In 1988, Seattle City Light asked Seattle's Department of Construction and Land Use (DCLU) whether Lots 1-4 could be separately developed. DCLU's opinion letter stated that Lots 1-2 must be developed as one building site because of the METRO Rectifier.

### Smoke's Administrative Attempts To Develop Lot 1 And Lot 2 Separately

In 1989, Seattle auctioned Lots 1-4. A diagram accompanying the bid invitation showed four platted lots and the rectifier. Smoke purchased the lots, but did not find the 1988 DCLU opinion letter until February 1990. Smoke understood the DCLU opinion letter might preclude development of Lots 1-2 as two building sites. He[1] delivered a letter to Hermena Ip, Seattle Land Use Specialist, explaining why Lots 1-2 should be considered two separate building lots. Ip never responded.

In April 1990, Smoke paid a fee to receive a computer contact number relating to each proposed building site. In

---

[1]We will use the masculine to refer to the appellants because Larry Smoke is the first name in the pleading caption.

September 1990, Smoke applied for master use and building permits for Lot 1 and Lot 2. Land Use correction sheets during October 1990 - January 1991 indicated that the permits would not be issued because the rectifier tied the two lots together for land use purposes. Smoke telephoned William Mills, a DCLU land use specialist (and attorney); Mills told Smoke that the permits would not be issued and that Smoke could apply for a legal building site letter or a formal building site code interpretation.

In March 1991, Smoke's attorney wrote to Mills, arguing that the two building permits should be issued. The letter was treated as a request for a legal building site opinion letter. Mills researched the issues and responded on April 5, 1991. Mills's letter concluded that Lots 1 and 2 could not be developed separately. The letter also stated that the determination was not appealable, but that Smoke could request a formal legal building site interpretation, followed by a hearing examiner appeal.

### Judicial Proceedings

In late April 1991, Smoke filed a complaint seeking a writ of mandamus and seeking damages under RCW 64.40, 42 U.S.C. § 1983, for interference with business expectancy, inverse condemnation, and misrepresentation. When Smoke moved for summary judgment on the writ, the City conceded that the rectifier did not prevent the proposed development, and it issued the permits in May 1992.

In November 1992, an arbitrator awarded Smoke $9,066.69. Seattle sought trial de novo, and the parties stipulated that "if the City is liable to the plaintiff, the amount of damages to be awarded shall be the same amount awarded by the arbitrator." At trial, the court granted Smoke recovery under RCW 64.40, but dismissed all other claims, including Smoke's claim for postjudgment

interest. Seattle appeals the judgment, and Smoke cross-appeals the denial of postjudgment interest.

## STANDARD OF REVIEW

■ The appeal requires interpretation of RCW 64.40 and Seattle's Municipal Code, making de novo review appropriate. *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 311, 815 P.2d 770 (1991).

## DISCUSSION

We must decide (1) whether RCW 64.40 requires exhaustion of administrative remedies prior to filing a damages action, (2) whether Smoke exhausted available administrative remedies, and (3) whether Smoke's failure to cross-appeal dismissal of his 42 U.S.C. § 1983 cause of action precludes review.

### Exhaustion Requirement

■ Seattle's primary contention is that RCW 64.40 requires exhaustion of administrative remedies prior to the filing of a damages action. The language of the statute is paramount when determining the intent of the Legislature. *State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451, 457-58, 869 P.2d 56 (1994). The statute provides:

> Any action to assert claims under the provisions of this chapter shall be commenced only within thirty days after all administrative remedies have been exhausted.

RCW 64.40.030. The statute plainly requires actions to be commenced "only . . . after all administrative remedies have been exhausted." The word "only" modifies "after all administrative remedies," not "within thirty days." *Cf.* RCW 34.05.534 ("[a] person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged"). Therefore, RCW 64.40 requires exhaustion of all administrative remedies prior to filing an action for damages.

This plain language interpretation accords with numerous decisions construing the limitation period also contained in RCW 64.40.030. In *Hayes v. City of Seattle,* 76 Wn. App. 877, 879, 888 P.2d 1227 (1995), the court held that "any action for damages under RCW 64.40 must be commenced within 30 days after administrative remedies have been exhausted." *See also R/L Assocs., Inc. v. City of Seattle,* 73 Wn. App. 390, 392, 869 P.2d 1091 ("[t]he statute expresses the time to file claims in terms of administrative remedies"), *review denied,* 125 Wn.2d 1006 (1994), and *Cox v. City of Lynnwood,* 72 Wn. App. 1, 10, 863 P.2d 578 (1993) (administrative exhaustion requirement inapplicable when there is no administrative review process for land use action sought).

Smoke contends that exhaustion is not required because Seattle "provides no administrative remedy to obtain money damages." This ignores a fundamental tenet of statutorily required exhaustion, as contrasted with the common law of administrative exhaustion. When a statute requires exhaustion, it sets out the scope of exhaustion and any applicable exceptions. Thus, if RCW 64.40 mandates exhaustion of administrative remedies, exhaustion is required regardless of whether the administrative remedies give rise to the end relief sought by a claimant. *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992). Even if money damages are not recoverable as a result of local land use administrative appeals, the Legislature can require claimants to exhaust those remedies. *Id.; cf.* RCW 34.05.534(3) (administrative remedies need not be exhausted if remedies would be patently inadequate, futile, or irreparable harm outweighs public policy requiring exhaustion). The plain language of RCW 64.40.030 requires exhaustion without regard to the availability of money damages pursuant to the applicable administrative process.    . . .

### Available Administrative Remedies

Because Smoke has no cause of action if he failed to

exhaust his remedies, we examine the type of permit sought and applicable administrative relief. Smoke's applications contained two related requests. For each lot, Smoke applied for a Master Use Permit (MUP) and a building permit.[2] Because the delay in issuing the permits arose from the land use portion of Smoke's Master Use And Construction Application, we turn to the land use code, Seattle Municipal Code (hereafter SMC), Chapter 23.

The establishment of a use requires approval according to the land use procedures set out in SMC, Chapter 23.76. SMC 23.40.002. Seattle's Municipal Code divides land use decisions requiring a Master Use Permit into several categories. SMC 23.76.006(A). Type I decisions include establishment of a use "permitted outright"; these decisions are characterized as requiring the exercise of little or no discretion. SMC 23.76.004(B)(1). Despite issues concerning minimum lot size exceptions and whether the power rectifier was a "principal structure," both parties agree that the land use decision in this case was a Type I determination. September 26, 1994, letter from Seattle City Attorney.

Because Type I decisions are "nonappealable" under Seattle's land use code, Smoke argues that there was no administrative remedy for denial of his permits. SMC 23.76.006(B). Seattle, on the other hand, argues that all land use decisions are administratively reviewable under SMC 23.88.020, which provides:

> A decision by the Director as to the meaning, application or intent of any provision of Title 23, Land Use Code, or Title

---

[2]The City of Seattle issues building permits when the work described in the application "substantially conforms" to the requirements of the building code and other pertinent laws and ordinances. Ex. 20 (1985 Seattle Building Code § 303(a), Department of Construction and Land Use (November 1987) (an amendment to the Uniform Building Code pursuant to Seattle Municipal Code (SMC) 22.100.010). A building permit requires construction in accordance with SMC 22.100. SMC 22.200.030, see also, by analogy, SMC 22.801.030 (Stormwater, Grading and Drainage Control subtitle). Although Smoke correctly points out that the administrative remedies contained in SMC 23.76 and SMC 23.88 do not apply to SMC Chapter 22, there was never any problem relating to the building permits.

24, Zoning and Subdivisions, as it relates to a specific piece of property is known as an "interpretation." An interpretation *may* be requested in writing by any person or *may* be initiated by the Director.

(Emphasis added.) SMC 23.88.020 allows "any person" to seek the Director's decision applying "any provision of Title 23" "to a specific piece of property." This broad language allows a Type I MUP applicant to have a permit denial reviewed; SMC 23.88.020(E) allows further appeal to the hearing examiner. But, for purposes of Seattle's land use code, SMC 23.88.020 is optional. Seattle recognized both the unappealable nature of Type I decisions and the optional nature of a request for interpretation in its March 1991 letter to Smoke:

> This letter represents the DCLU position regarding the development potential of the property at 906-910 Martin Luther King Jr. Way. It is not an appealable legal determination. If you wish to challenge the DCLU determination, you may request a formal legal building site interpretation, which is appealable to the Seattle Office of the Hearing Examiner. . . . The interpretation request should state specifically the questions subject to interpretation and reference the sections of the Land Use Code on which the interpretation is sought.

In this action, Smoke is seeking damages pursuant to RCW 64.40. Therefore, the statute, not the land use code, determines whether Smoke was required to exhaust a particular administrative remedy, regardless of its optional nature. *Cf. McCarthy*, 503 U.S. at 144. The issue is whether RCW 64.40 requires exhaustion of the optional administrative remedy as a condition precedent to recovery of damages.[3]

When a statute addresses exhaustion, "[c]ourts are not

[3]Because this case involves application of RCW 64.40, the discussion of exhaustion contained in *R/L Assocs.*, 61 Wn. App. at 675-78, is not directly applicable. Washington's mandamus statute does not mention exhaustion, although it only allows mandamus where a "plain, speedy and adequate remedy in the ordinary course of law" is unavailable. RCW 7.16.170. The exhaustion doctrine in *R/L Assocs.* was evidently applied as a matter of judicial discretion, and the judicial doctrine is applicable in the absence of statutory proscription,

free simply to apply the common law exhaustion doctrine with its pragmatic, judicially defined exceptions. Courts must, of course, apply the terms of the statute." 2 Kenneth C. Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 15.3, at 318 (3d ed. 1994). RCW 64.40.030 requires exhaustion of "all administrative remedies" prior to commencement of any action.[4] "All administrative remedies" includes optional and mandatory remedies.[5] This interpretation comports with the statute's purpose, which does not favor or disfavor development, but instead gives some measure of relief to applicants who are mistreated. Senate Journal, 47th Legislature (1982), at 1449; *see also* RCW 64.40.010(1), (4), (6) (limiting damages to those caused by an "act," defined to be a final decision by an agency). When the Legislature required exhaustion of *all* administrative remedies, it intended to give government every op-

---

restriction, or direction. *Darby v. Cisneros*, 509 U.S. 137, 113 S. Ct. 2539, 2548, 125 L. Ed. 2d 113 (1993). We do not address the appropriateness of requiring exhaustion of an optional administrative remedy prior to seeking mandamus.

[4] RCW 64.40.030's exhaustion requirement is strict in comparison to other statutory exhaustion requirements. *See, e.g.,* RCW 19.30.170(1) (any person aggrieved by a violation of this chapter . . . may bring suit . . . without regard to exhaustion of any alternative administrative remedies provided in this chapter); RCW 34.05.534(3)(a)-(c) ("The court may relieve a petitioner of the requirement to exhaust any or all administrative remedies upon a showing" of patent inadequacy, futility, or irreparable harm which clearly outweighs public policy requiring exhaustion); RCW 49.66.070 (any employee organization may maintain legal action to seek relief from an unfair labor practice provided that such organization "exhausts the administrative remedies under rules and regulations promulgated by the department prior to seeking such court action"); and RCW 74.20A.200 ("It is the intent of this chapter that jurisdictional and constitutional issues, if any, shall be subject to review, but that administrative remedies be exhausted prior to judicial review.").

[5] *Vass v. Board of Trustees of Teachers' & State Employees' Comprehensive Major Medical Plan*, 324 N.C. 402, 379 S.E.2d 26 (1989), for example, construed an optional administrative remedy together with a mandatory exhaustion requirement. N.C.G.S. § 150B-22 (1987) provided for informal dispute resolution between agencies and other persons, and if the parties were unable to agree, "either the agency or the person *may* commence an administrative proceeding to determine the person's rights, duties, or privileges, at which time the dispute becomes a 'contested case.' " Judicial review of contested cases was conditioned upon exhaustion of "*all administrative remedies* made available to him by statute or agency rule." (Emphasis added.) N.C.G.S. § 150B-43. The court held that the plaintiff had failed to exhaust "all administrative remedies" by not seeking an administrative proceeding. 379 S.E.2d at 30.

portunity to discover its own mistake prior to imposition of liability.

In conclusion, RCW 64.40.030 requires exhaustion of "all administrative remedies," including remedies which the underlying code characterizes as optional. Smoke did not exhaust an available administrative remedy. Smoke's failure to exhaust administrative remedies precludes the recovery of damages under RCW 64.40.

### Alternate Ground For Recovery: 42 U.S.C. § 1983

Smoke's complaint seeks damages pursuant to 42 U.S.C. § 1983. The court's conclusions of law held "the City's determination to deny these permits was not frivolous, irrational or arbitrary and plaintiffs are not entitled to relief under 42 U.S.C. [§] 1983." Smoke moved the court to reconsider, and the court reiterated its dismissal of Smoke's § 1983 claim. The Notice Of Cross Appeal only appealed the court's denial of postjudgment interest. Smoke's brief, however, contends the trial court made an error of law by denying recovery under 42 U.S.C. § 1983, and urges this court to affirm the judgment using 42 U.S.C. § 1983 as an alternate ground. He relies on the theory that a trial court's judgment "will be sustained if correct upon any ground within the pleadings and established by the proof." *Ennis v. Ring*, 49 Wn.2d 284, 289, 300 P.2d 773 (1956). Seattle contends Smoke waived his right to appeal the § 1983 dismissal by failing to designate the issue in the cross-appeal notice.

The respondent, plaintiff below, won a $9,066.69 judgment for damages based on RCW 64.40. A respondent must cross-appeal when seeking affirmative relief. RAP 2.4(a), 5.2(f). The issue is whether Smoke would receive affirmative relief if the trial court's dismissal of his § 1983 claim was reversed, when the end result, because the parties have stipulated to the amount of damages, would be a judgment for $9,066.69.

A judgment is composed of distinct parts, each requiring a cross-appeal if the respondent, successful on

one part, seeks reversal of some other part. For example, a plaintiff/respondent who recovers damages, but is not awarded prejudgment interest, must file a notice of cross-appeal to assure review of the order denying prejudgment interest. *De Blasio v. Kittitas*, 57 Wn.2d 208, 213, 356 P.2d 606 (1960).

Part of an affirmative judgment may be damages. It is possible to conceive of damages as merely a lump sum of money, divorced from the legal theory upon which it was awarded. But just as damages and interest are distinct, although derived from the same subject matter, each claim for damages is also distinct. *Helvering v. Pfeiffer*, 302 U.S. 247, 250-51, 58 S. Ct. 159, 82 L. Ed. 231 (1937). An award of damages is thus inextricably intertwined with the cause of action upon which it was awarded. A respondent must cross-appeal when seeking reversal of an adverse ruling on a distinct claim or cause of action, even when the effect of reversal would be to affirm the net amount of the judgment. *Helvering v. Pfeiffer*, 302 U.S. at 250-51.[6]

Smoke asks the court to award him damages on a theory of liability rejected by the trial court. The result sought constitutes affirmative relief because the damages which Smoke would receive are distinct in origin from those awarded for violation of RCW 64.40 *and* the trial court dismissed the § 1983 cause of action. Because Smoke did not cross-appeal the trial court's dismissal of the § 1983 claim, we decline to address the merits of the alleged error.

The trial court is reversed, and Smoke's complaint is dismissed.

BECKER, J., concurs.

---

[6]Similarly, a cross-appeal must be filed when the respondent seeks damages on distinct claims, in addition to affirmance of the judgment. *Waagen v. Gerde*, 36 Wn.2d 563, 577, 219 P.2d 595 (1950). Nor, absent a cross-appeal, can the respondent seek dismissal of a distinct claim even though the dollar amount of the judgment would not change. *Simpson Timber Co. v. Aetna Casualty & Sur. Co.*, 19 Wn. App. 535, 542, 576 P.2d 437 (1978), *review denied*, 91 Wn.2d 1013 (1979).

AGID, J. (dissenting) — Having finally unraveled one of the mysteries of the Seattle Land Use Code, Seattle Municipal Code (SMC) Title 23, I must respectfully dissent. I do so with some chagrin because, as one of the judges who concurred in *R/L Assocs., Inc. v. City of Seattle*, 61 Wn. App. 670, 811 P.2d 971, *review denied*, 117 Wn.2d 1024 (1991), I share responsibility for what I now believe is the error compounded by the majority's decision in this case.

In *R/L Assocs.*, the panel affirmed the trial court's determination that R/L was not entitled to a writ of mandamus to compel issuance of a building permit. We did so on two grounds, one of which was R/L's failure to exhaust administrative remedies before seeking the writ. In the first section of the opinion we held that R/L was not entitled to a writ of mandamus because it failed to show that it had a "clear right" to the permit. 61 Wn. App. at 674. Thus, the discussion of administrative remedies was dicta. While I continue to agree with all the salutary policy reasons for exhausting administrative remedies we considered there, I no longer agree that seeking an interpretation of the Director of Department of Construction and Land Use (DCLU) is an administrative "remedy" which a building permit applicant must exhaust before seeking a writ of mandamus and/or damages under RCW 64.40 for failure to grant the permit.

*Smoke v. City of Seattle* was initially cast in the parties' briefs and at oral argument as a controversy over whether the master use permit (MUP) the applicant sought was a "Type I" or "Type II" decision. The majority opinion states, however, that "both parties agree that the land use decision in this case was a Type I determination." Majority at 418. I am not sure that the postargument letter from the City Attorney in fact makes that concession, but I agree that the use permit was a Type I determination because there is no basis on which an application to establish a use can be a Type II MUP. The only kind of use permit even mentioned in SMC 23.76.006(C) (Type II permits) is "[e]stablishment or change of use for *temporary* uses more than three (3) weeks not otherwise permitted in

the zone, except temporary relocation of police and fire stations for twelve (12) months or less." (Italics mine.) SMC 23.76.006(C)(1). Therefore, the majority properly rejects the City's initial argument that, because Smoke applied for a Type II MUP, which has a built-in appeal to the Hearing Examiner, Smoke was required to exhaust administrative remedies in this case. Not even *R/L Assocs.* stands for that proposition.

For purposes of our decision in this case, the critical difference between a Type I and a Type II decision is that the former is final and the latter may be appealed to the Hearing Examiner. SMC 23.76.006(B) and (C). Smoke applied for a MUP under SMC 23.76.006(B) (Type I) to establish a use "for uses permitted outright." He also applied for a building permit. A building permit is not a master use permit at all. It is issued under the Building Code, SMC Ch. 22.10; 22.801.030, an entirely different code to which the MUP provisions do not apply. Thus, Smoke is correct in arguing that there is no administrative remedy where the decision at issue is one denying a building permit. SMC 23.76.006; 23.76.004A; 23.76.022.

However, Smoke is incorrect when he asserts that the Land Use Code and its MUP provisions did not apply to him because he sought only a building permit. A building permit can be issued only for a use that is permitted on the property. SMC 23.40.002. Therefore, because he apparently thought it was necessary to establish the use of the property as single family residential, the use for which it was zoned, he applied for a Type I MUP. SMC 23.76.006(B). DCLU denied that MUP, for what is commonly known as a use permit. Under SMC 23.76.006(B), DCLU's decision is final. Mill's acknowledged as much in his April 5, 1991 letter. "This letter represents the DCLU position regarding the development potential of the property at 906-910 Martin Luther King Jr. Way. *It is not an appealable legal determination.*" (Italics mine.)

At this point, confusion enters. Mills goes on to direct that Smoke "may request a formal legal building site de-

termination, which is appealable to the Seattle Office of the Hearing Examiner." And, at this point, the logic of *R/L Assocs.* and the majority here breaks down. Smoke applied for a Type I MUP. He lost. Nowhere does the Land Use Code provide for an appeal from that decision. Smoke did not apply under the entirely different provisions of another division of the Code for an "interpretation of the Director," the procedure to which Mills referred in his letter. Nor does anything in the Land Use Code require him to do so.

Interpretations are governed by SMC 23.88.020, the portion of the Land Use Code governing the Director's power to adopt rules implementing it and issue interpretations explaining it. The decision to seek an interpretation is entirely voluntary. "An interpretation *may* be requested in writing by any person or may be initiated by the Director." (Italics mine.) SMC 23.88.020(A). Nothing in the Code requires or even suggests that one can, should or must seek an "interpretation" as a remedy for losing an unappealable MUP decision. The two are not even linked. And the applicant must pay yet another fee to obtain the interpretation from the same Director of the same department (DCLU) that has just denied his MUP. While an interpretation is an optional, voluntary process an applicant may choose to invoke, no provision of the Code suggests or requires that an applicant obtain one as an administrative remedy for a decision denying a Type I MUP application. As is clear from Mills's March 1991 letter quoted above, DCLU concurs with my interpretation of the Code on this point. As the agency charged with administering the Seattle Land Use Code, DCLU's interpretations are entitled to deference from this court. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

In order to hold that the Legislature intended to require applicants for permits to use any conceivable remedy that may be available, even if it requires paying another fee and undertaking another process not required by the Code,

the majority must rely on a North Carolina case, *Vass v. Board of Trustees of Teachers' & State Employees' Comprehensive Major Medical Plan,* 324 N.C. 402, 379 S.E.2d 26 (1989). Majority at 420 n.5. Apparently, there is no Washington authority which stands for the proposition the majority wishes to endorse. It goes without saying that *Vass* is not binding on this court, and I do not find its rationale persuasive because it relied on an available administrative *appeal,* not resort to an entirely different procedure which requires a new, separate application.

The result the majority reaches here seems particularly ironic in view of its recognition that the purpose of RCW 64.40 was to give "some measure of relief to applicants who are mistreated." Majority at 418. To require applicants to go through the formal interpretation process with its attendant appeal simply adds months or years to the process during which those who have been "mistreated" must wait to receive compensation for the mistreatment. That is especially true where, as here, the same agency that made the initial admittedly wrong decision will make the decision in the formal interpretation process, and the City admitted its error as soon as Smoke filed suit in this case.

Because I have concluded that there is no administrative remedy which applies to Type I MUPs, as opposed to "any person['s]" voluntary decision to seek an interpretation of the Director under an entirely different chapter of the Land Use Code, I must dissent from the holding that Smoke failed to exhaust an administrative remedy after Mills informed him of the unappealable legal determination representing DCLU's position on his MUP application. I agree with the remainder of the majority's opinion, but would affirm the trial court on the ground that there was no administrative remedy to exhaust.

Review granted at 129 Wn.2d 1005 (1996).