IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DANIEL DUFFUS, | ) | No. 71294-2-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SEATTLE by and through its | ) | UNPUBLISHED OPINION |
| Department of Planning and | ) | |
| Development, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 23, 2015 |

SCHINDLER, J. — Former Seattle Municipal Code (SMC) 23.44.010.B.1.d (2012)[1]

creates an exception to the minimum lot area requirements for a lot that is "at least 50

percent of the minimum required . . . and was established as a separate building site in

the public records of the county or City prior to July 24, 1957, by deed, contract of sale,

mortgage, platting or building permit." Real estate developer Daniel Duffus filed an

appeal under the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the

decision of the City of Seattle Department of Planning and Development and the

hearing examiner that the west half of a residential lot does not meet this exception.

Duffus asserts that because the 1904 deed established the west half of the residential

lot as a separate building site, the decision is a clearly erroneous application of the law

to the undisputed facts. We affirm the decision of the hearing examiner and dismissal

_____

[1] Seattle Ordinance 123978, § 2 (Sept. 20, 2012).

of the LUPA appeal.

## FACTS

The facts are not in dispute. Clifford Low owns "Lot 7." Lot 7 is located in a single family residential zone at the southeast corner of East Jefferson Street and Erie Avenue in Seattle. The west half of the lot is vacant. A house is located on the east half of the lot. Under SMC 23.44.010, the minimum lot area requirement for a legal building site on Lot 7 is 5,000 square feet. Lot 7 is 6,600 square feet, 60 feet by 110 feet.

Daniel Duffus is the owner and manager of Soleil Development LLC. Duffus obtained the right to purchase the vacant west half of Lot 7 from Low "contingent on the Subject Property being the subject of a building permit." The west half of Lot 7 is 3,300 square feet.

On January 31, 2012, Duffus requested the City of Seattle Department of Planning and Development (DPD) issue a legal building site opinion on whether the west half of Lot 7 qualified for development as a separate building site. Duffus asserted the west side of Lot 7 met the exception to the minimum lot area requirements for a separate building site established by deed in the public records before July 24, 1957 under SMC 23.44.010.B.1.d.

On March 2, DPD issued an opinion letter. Based on the history of Lot 7, DPD determined that the west half of the lot did not qualify for development as a separate building site under former SMC 23.44.010.B.1.d. DPD concluded the SMC exception to the minimum lot size requirement did not apply because the west half of Lot 7 "has always been under common ownership with one or more of the abutting properties" and

2

"has never, on its own, been separately conveyed by a deed or . . . permit" before 1957. The opinion letter describes the history of Lot 7:

> From 1904 until 1914, the west half of Lot 7 was under common ownership with the west half of the north 49 feet of Lot 8, to the south. This property was owned by Baird, then Moss, then Converse. During this time, the east half of Lot 7, the east half of the north 49 feet of Lot 8, and Lot 6 (to the east of Lot 7) were all owned by . . . Remer. Remer acquired the west half of Lot 7 and the west half of the north 49 feet of Lot 8 in 1914, so that she had all of Lots 6 and 7 and the north 49 feet of Lot 8. She conveyed all of this property to Kinnear in 1923, and Kinnear acquired the remainder of Lot 8, as well as Lot 9 to the south, in 1927. Kinnear sold off Lot 6 in 1938, and retained ownership of Lots 7, 8 and 9 until 1972, when Lots 7 and 8 were each sold to separate parties.

Following issuance of the DPD opinion letter, Duffus requested a "Land Use Code Interpretation" from the DPD Director. On February 28, 2013, the DPD Director issued Interpretation 12-002. Interpretation 12-002 states the west half of Lot 7 "does not qualify for development as a separate legal building site under any of the lot area exceptions in [former SMC] Section 23.44.010.B." Interpretation 12-002 states, in pertinent part:

> [T]he west half of Lot 7 is a portion of a platted lot that has always been under common ownership with one or more of the abutting properties. It has never, on its own, been separately mortgaged, conveyed by a deed or called out on a building permit. From 1904 to 1914 it was held together with the north 49 feet of the west half of Lot 8, under separate ownership from all other abutting properties. The various portions of Lots 7, 8, and 9 were then consolidated, and Lot 7 in its entirety was later split off.

Duffus appealed the interpretation of the DPD Director to the City of Seattle Hearing Examiner. Duffus and DPD filed cross motions for summary judgment. The hearing examiner granted the DPD motion for summary judgment and affirmed the DPD Director's determination that the undisputed historical records did not establish the west half of Lot 7 as a separate building site.

Duffus filed a petition in superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the decision of DPD and the hearing examiner. The superior court affirmed the decision and dismissed the LUPA petition. Duffus appeals.

ANALYSIS

Duffus contends the determination that the west half of Lot 7 does not meet the exception to the minimum lot area requirements under former SMC 23.44.010.B.1.d is a clearly erroneous application of the law to the undisputed facts.[2]

LUPA governs judicial review of land use decisions. RCW 36.70C.030; Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 742, 317 P.3d 1037 (2014). In a LUPA appeal, we review the final determination of the "local jurisdiction's body or officer with the highest level of authority to make the determination" directly on the administrative record. RCW 36.70C.020(2); Dep't of Dev. & Envtl. Servs. v. King County., 177 Wn.2d 636, 643, 305 P.3d 240 (2013). Alleged errors of law are reviewed de novo. King County, 177 Wn.2d at 643.

The clearly erroneous standard under RCW 36.70C.130(1)(d) supports relief if the "land use decision is a clearly erroneous application of the law to the facts." City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 136 Wn.2d 38, 45, 959 P.2d 1091 (1998). We will reverse only if "left with a definite and firm conviction" that the decision is erroneous. Milestone Homes, Inc. v. City of Bonney Lake, 145 Wn. App.

_____

[2] Below, Duffus also argued the "tax segregation lot-area exception" applied under former SMC 23.44.010.B.1.d (Seattle Ordinance 123809, § 6 (Jan. 27, 2012)). Several months before DPD issued Interpretation 12-002, the city council adopted Seattle Ordinance 123978. Ordinance 123978 deletes the phrase "property tax segregation" from SMC 23.44.010.B.1.d. The hearing examiner concluded DPD correctly determined that the "property tax segregation" exception did not apply because Duffus failed to submit a building permit application prior to the effective date of the code change. Duffus does not challenge this determination on appeal.

4

118, 126, 186 P.3d 357 (2008).[3]

Interpretation of a municipal ordinance is a question of law this court reviews de novo. Ellensburg Cement, 179 Wn.2d at 743. We construe municipal ordinances according to the rules of statutory interpretation. Ellensburg Cement, 179 Wn.2d at 743. When interpreting statutory language, our goal is to carry out the intent of the legislative body. Ellensburg Cement, 179 Wn.2d at 743. We look first to the text of a statute to determine its meaning. Griffin v. Thurston County Bd. of Health, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). Where a statute is clear on its face, its plain meaning should " 'be derived from the language of the statute alone.' " Ford Motor Co. v. City of Seattle, 160 Wn.2d 32, 41, 156 P.3d 185 (2007) (quoting Kilian v. Atkinson, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)). A construction that would render a portion of a statute meaningless or superfluous should be avoided. Ford, 160 Wn.2d at 41. When construing a municipal ordinance, we give " 'considerable deference' " to the construction of the ordinance by those officials charged with enforcement. Ford, 160 Wn.2d at 42 (quoting Gen. Motors Corp. v. City of Seattle, 107 Wn. App. 42, 57, 25 P.3d 1022 (2001)).

SMC 23.44.010.B sets forth the exceptions to the minimum lot area requirements for a single family residential zone. Duffus argues the record establishes the exception for a lot that has an area of at least 50 percent of the minimum required and was established as a separate building site in public records by deed before 1957 applies.

Former SMC 23.44.010.B.1.d states:

> B.   Exceptions to Minimum Lot Area Requirements. The following exceptions to minimum lot area requirements are allowed, subject to the development standards for undersized lots in subsection 23.44.010.C, except as limited under subsection 23.44.010.B.2:

---

[3] Duffus also contends the hearing examiner's determination is not supported by substantial evidence, but he does not challenge the sufficiency of the evidence.

1.    A lot that does not satisfy the minimum lot area requirements of its zone may be developed or redeveloped separately under one of the following circumstances:

. . . .

d.    The lot has an area at least 50 percent of the minimum required under section 23.44.010.A, and was established as a separate building site in the public records of the county or City prior to July 24, 1957, by deed, contract of sale, mortgage, platting or building permit.

Under the plain language of former SMC 23.44.010.B.1.d, to meet the exception to the minimum lot area requirements, in addition to a lot that is at least 50 percent of the minimum required, there must be a deed, contract of sale, mortgage, or building permit establishing the lot as a separate building site in the public records before July 24, 1957. To establish a lot as "a separate building site," the deed must convey the lot separate from other property, or the deed must convey the property in such a way that it creates a separate building site.

Duffus asserts the determination that the west half of Lot 7 does not meet the requirements for a historic lot exception under former SMC 23.44.010.B.1.d is "a clearly erroneous application of the law to the facts." Duffus claims that the 1904 deed established the west half of Lot 7 as a separate building site. Specifically, Duffus asserts that because the 1904 deed conveyed only half of Lot 7, it established the west half of Lot 7 as a separate building site. Duffus also points to a 1907 building permit as evidence that the 1904 deed established the west half of Lot 7 as a separate building site. Because the unchallenged record supports the determination that the 1904 deed did not establish the west half of Lot 7 as a separate building site, we disagree.

The 1904 deed does not establish the west half of Lot 7 as a separate building site. Baird conveyed the east half of Lot 7 with Lot 6 and the east half of the north 49

6

feet of Lot 8 to Remer. Baird retained the west half of Lot 7 and the west half of the north 49 feet of Lot 8. In 1905, Baird conveyed the west half of Lot 7 and the west half of the north 49 feet of Lot 8 to Moss. In 1906, Moss conveyed the west half of Lot 7 and the west half of the north 49 feet of Lot 8 to Converse. In 1914, Converse conveyed the west half of Lot 7 and the west half of the north 49 feet of Lot 8 to Remer. As a result, Remer owned all of Lots 6 and 7 and the north 49 feet of Lot 8. In 1923, Remer conveyed Lots 6 and 7 and the north 49 feet of Lot 8 to Kinnear. In 1927, Kinnear acquired the remainder of Lot 8 and all of Lot 9. In 1938, Kinnear sold Lot 6 but retained ownership of Lots 7, 8, and 9. In 1972, Kinnear sold Lot 7 and Lot 8 to separate purchasers.

Nor does the building permit the city issued to Remer in 1907 for the construction of a house on the east half of Lot 7 establish that the west half of Lot 7 is a separate building site. Duffus contends the permit to build on the east half of Lot 7 shows that the west half of Lot 7 "enjoy[ed] the same buildable status." But the 1907 application for the building permit identifies the property as the "E1/2 of [Lots] 7 and 8."[4]

Duffus also asserts the hearing examiner erred in concluding that in order to qualify for the historic lot area exception under former SMC 23.44.010.B.1.d, he had to show that the west half of Lot 7 was the subject of a separate building permit. Duffus mischaracterizes the decision of the hearing examiner.

After concluding that the historic records did not show the west half of Lot 7 was established as a separate building site "by deed," the hearing examiner considered

_____

[4] Duffus also argues the building permit Remer obtained in 1908 for the east half of Lot 8 establishes the east half of Lot 7 as a separate building site and, therefore, the west half of Lot 7 is a separate building site. The issuance of a building permit for the east half of Lot 8 does not establish the west half of Lot 7 as a separate building site.

whether the property was established as a separate building site by "building permit." The hearing examiner did not err in concluding the records "do not show that the west half of Lot 7 was ever the subject of a separate building permit, or that it was ever owned separately from all of the abutting properties." In reaching that conclusion, the hearing examiner states that "[a]t best, those records leave open the possibility that the site could have been considered a separate building site by the County," but then states that it was also "quite possible" that the lot was platted and divided by deeds "with no intention of creating individual building sites."

> The issue is whether the property was "established" as a "separate building site" in the public records. The historic records which have been presented by the parties, and which are not disputed, do not show that the west half of Lot 7 was ever the subject of a separate building permit, or that it was ever owned separately from all of the abutting properties. At best, those records leave open the possibility that the site could have been considered a separate building site by the County. It is also quite possible that the plat, as suggested by the [DPD] Director, simply resembles other patterns of properties at the corner of a block, in which a lot was platted with one orientation and divided by deeds into lots with an orientation of 90 degrees from the platted lots, with no intention of creating individual building sites. Similarly, the fact that portions of platted lots appeared on separate ledge lines, devoid of other indicia that the portions were actually intended to be separate building sites, is not sufficient to show that the exemption applies. The available records fall short of establishing the west half of Lot 7 as a separate building site.[5]

We conclude DPD and the hearing examiner did not err in concluding the public records before 1957 did not establish the west half of Lot 7 as a separate building site. The 1904 deed does not demonstrate the conveyance established a separate building site. The building permit issued in 1907 also does not establish the west half of Lot 7 as a separate building site.

R/L Associates, Inc. v. City of Seattle, 61 Wn. App. 670, 811 P.2d 971 (1991),

---

[5] Emphasis in original.

review denied, 117 Wn.2d 1024, 820 P.2d 510 (1991), supports our analysis. In R/L Associates, a developer filed a mandamus action, arguing the city had a legal duty to grant the building permit because the public records before July 24, 1957 established a separate building site on the lot. R/L Assocs., 61 Wn. App. at 672-73. The city conceded the two statutory warranty deeds the developer relied on established the lot as a separate site but argued there was "no evidence that the lot was established as a separate building site." R/L Assocs., 61 Wn. App. at 673-74.[6] We affirmed denial of a writ of mandamus because the deeds did not "clearly establish[ ]" or "demonstrate whether either conveyance was made for the express purpose of establishing a 'separate building site.' " R/L Assocs., 61 Wn. App. at 674.[7] The court in R/L Associates "agree[d] with the City that the term 'building' must be presumed to have some meaning independent of the term 'site.' " R/L Assocs., 61 Wn. App. at 674.

We affirm the decision of the hearing examiner and dismissal of the LUPA appeal.

WE CONCUR:

---

[6] Emphasis in original.
[7] Emphasis in original.

9